# CHARLESTON

### CHAMBERS *v.* CLINE.

Submitted September 12, 1906. Decided November 20, 1906.

1. COUNTIES—*Removal of County Seat—Special Election.*

   Where a vote upon the question of the removal of the county seat of a county has been taken at a general election, under the provisions of section 15, chapter 39, Code 1906, Annotated, and the election on such question has been, upon the hearing of a contest as to the result of such vote, by the county court held to be "not legally held and returned, and was invalid and void;" it is competent, while such final decision and judgment remain valid, and unquestioned by legal proceedings to review the same, for the county court, upon receiving the petition of the requisite number of legal voters of their county asking therefor, to order the holding of a special election for said purpose in a subsequent year in which no general election is held as provided in said section. (p. 589.)

2. BONDS—*Presumptions.*

   In the absence of anything showing a different intention in the giving of a statutory bond, it will be presumed that the intention of the parties was to execute such a bond as the law required. (p. 596.)

3. SAME—*Construction.*

   So, where a bond is given under the authority of a statute, that which is not expressed but should have been incorporated, is included in the bond, while that which is not required by the statute is excluded, if it is sufficiently clear from the bond itself that the intention of the parties was to comply with the law in its execution. (p. 596.)

4. SAME.

   *Reed* v. *Hedges*, 16 W. Va. 167, (Syl. point 4:) *Furniture Co.* v. *McGuire*, 46 W. Va. 328, (Syl, points 2, 3 and 5); and *State* v. *Wotring*, 56 W. Va. 394, (Syl. point 2) approved and applied. (p. 596.)

5. COUNTIES—*Removal of County Seat—Petition.*

   When the citizens of a county desire the re-location of their county seat and file with the county court their petition under the provisions of said section 15, and said petition is signed on several separate papers all to the same effect and naming the same place to be voted for as the place at which the re-location shall be made, such several separate papers, without regard to the number thereof, constitute together one petition only. (pp. 598, 599.)

Error to Circuit Court, Wyoming County.

Action by A. L. Chambers and others against H. M. Cline and others. Judgment for defendants and petitioners bring error.

*Affirmed.*

CHILTON, MACCORKLE & CHILTON, JOHN E. BLAKE, JAMES H. GILMORE, and R. R. SMITH, for plaintiffs in error.

JOHN M. MCGRATH, J. LEWIS BUMGARDNER, M. F. MATHENY, D. E. FRENCH, and J. J. SWOPE, for defendants in error.

MCWHORTER, PRESIDENT:

On the 8th day of June, 1905, Jasper N. Cook and 1133 others, citizens and legal voters of Wyoming county, filed in open court in the county court of Wyoming county their petition praying the said court to make an order directing a special election to be held in said county for the purpose of voting upon the question of the re-location of the county seat of said county at Pineville at a time to be fixed by said court as required by section 15, chapter 39, Code 1906, Annotated, to which petition was annexed the affidavits of Jasper N. Cook and H. M. Cline that said signers of the petition were legal voters in said county, and the said Cline as principal with W. G. Sparks, Jasper N. Cook and A. B. Shannon sureties filed their bond in the penalty of $5,000, which bond was received and approved by the said county court under the said section 15, when the county court ordered a special election to be held in said county in pursuance of said petition on Tuesday the 29th day of August, 1905, and made due provision in said order for the holding of said election by giving the necessary notices and appointing commissioners for each of the several voting precincts of said county. It afterwards being suggested to the court that said bond filed with the petition might be defective in the conditions thereof, the said court called a special term to be held at the court house of said county on the 1st day of July, 1905, for the purposes, among other things, of providing for the registration of voters of the county prior to the special election aforesaid and "to take any new or amended bond which might be offered or tendered concerning the special election to be held on the 29th day of August, 1905." At said special session,

so called, on the 1st day of July, 1905, after reciting that it appeared to the court from statement of counsel that there might be some question as to the legality of the bond in the penality of $5,000 which was executed by said Cline · and others on the 8th day of June, 1905, in compliance with the statute requiring a bond to be filed conditioned to pay the costs of the special election, so called: " On motion of H. M. Cline he is allowed to execute another and supplemental bond in like penalty in this cause with R. L. Bower, Joseph Mace, Isaac Lambert, Philip Lambert and Eli Moran as sureties and conditioned according to law, which is accordingly done and accepted and ordered to be filed and recorded with the records of this court." The county court met in special session on the 31st day of August, 1905, for the purpose of canvassing the votes and declaring the result of said special election at which time, and before the result was ascertained and declared, a recount of said votes was demanded which recount was refused by the commissioners.

On the application of A. L. Chambers and others to the circuit court of said county an alternative writ of *mandamus* was awarded requiring the said county court to meet at the court house in special session on the 9th day of October, 1905, to permit the petitioners to contest said special election held on the 29th day of August, 1905, and commanding said county court to make, sign and seal all proper and legal bills of exceptions which might be necessary to complete a record in the proceedings in said contest or to show cause why it should not do so. Said county court made its return to said writ denying that said court had declined and refused to recount said votes by reason of what was termed in said writ as the arbitrary and illegal acts of respondent but because the court was of opinion that the parties failed to make such demand at the time and in the manner required by law; that they were not advised as to whether any illegal votes were cast at said election in favor of the re-location of the county seat or otherwise and therefore made no admission or denial in regard thereto; did not admit that there was any irregularity in the proceedings of the said special session of August 31st, 1905, or that they acted arbitrarily or illegally and expressed a willingness to acquiesce in the issuance by the circuit court of a peremptory writ of *mandamus* commanding the court

to meet at the court house on a day to be fixed in said writ for the purpose of re-canvassing and re-counting the votes cast at said special election and of permitting the petitioners or any proper party to demand a recount or of contesting the said election should they so desire. Thereupon, on the 18th of September, 1905, the circuit court made said alternative writ peremptory requiring the said county court to meet at the court house on the 9th day of October, 1905, and providing that "at said meeting they shall permit said petitioners to contest said election as to any legal matters presented to them and especially to permit a recount of the ballots cast at said special election and do and perform all things required of them by the peremptory writ of *mandamus* herein provided for."

In pursuance of said peremptory *mandamus* the court met on the 9th day of October, 1905, in special session, after due notice calling such session, when the contestants by their attorneys moved the court to declare said election void for the reason that an election had been held in said county upon the same question and between the same places on the 8th day of November, 1904, and a contest thereof had been instituted and was undetermined on the 8th day of June, 1905, when said election on that day was ordered to be held, and in support of said motion, introduced a certified copy of the record in the *certiorari* proceedings lately pending in the circuit court of said county and dismissed by final order of said court entered on the ⏤ day of September, 1905, which motion was resisted by the attorneys for the contestees and overruled by the court, to which ruling of the court the contestants at the time excepted and contestants moved the said election of August 29, 1905, be declared void for the reason that no proper petition was presented to the court asking for said election; that the required number of legal voters in Wyoming county did not sign the petition which was filed and for other reasons apparent upon the face of said petition and tendered in support of said motion certified copies of the petition and affidavits which motion was overruled and the contestants excepted. Contestants moved the court to declare the said election void because the bond executed on the 8th day of June, 1905, at the time said election was ordered was void for the lack of legal conditions

and tendered in evidence a certified copy of said bond, which motion was resisted by contestees who tendered a certified copy of a bond executed on the 1st day of July, 1905, to which last bond the contestants objected as evidence but the court overruled the objection and permitted said bond of July 1st, 1905, to be filed and the court having considered both of said bonds in evidence refused to declare the election void, to which ruling of the court the contestants excepted and tendered their three several bills of exceptions marked 1, 2 and 3 respectively, which bills were signed and sealed and made a part of the record. The Clerk of the County Court then laid before the court the certificate of the result of said special election upon the question of the re-location of the county seat of the county at Pineville or the town of Castle Rock in said county held on the 29th day of August, 1905, and it appearing to the court that the various notices of the said election were published and posted as required by law the court proceeded to ascertain and declare the result when it was ascertained that the total number of votes cast at said election was 1779 of which 1119 votes were cast for the re-location at Pineville and 660 were cast against re-location. The contestants then, by their counsel, moved and demanded that the court open the sealed packages of ballots cast at said election at certain precincts named and to recount the same to which motion contestees, by counsel, objected, which objection was overruled and the contestees excepted and the court proceeded to open said packages and found that the votes cast at said election at said precincts corresponded in all respects both as to the number which were cast and the result thereof with the certificates of the result certified by the commissioners of the election theretofore ascertained and declared by the court save and and except one ballot at Barker's Ridge District, Precinct No. 1, was found, upon which the poll clerks had not written their names on the back thereof as required by law, which the court threw out and rejected as an improper and illegal ballot and proceeded to declare the result of the election so held on the 29th day of August, 1905, to be as follows: Total number of votes cast in the county 1778, of which 1118 votes were cast in favor of the re-location of the county seat of said county at Pineville or the town of Castle

Rock and of which 660 votes were cast against such relocation "from which it appeared to the court and the court so decided that fifty-one and three-fifths (51 3-5) more than three-fifths of the total votes cast at the said election were cast in favor of the re-location of the county seat of this county at Pineville, or the Town of Castle Rock this county, the said last named place to-wit: Pineville or the Town of Castle Rock in this county is hereby declared to be the county seat of Wyoming County, West Virginia, from and after this date," and ordered that the result of the election in detail be entered in the record book. The contestants, by their counsel, excepted to the ruling of the court in ascertaining and declaring the result for the reasons set forth in their said bills of exceptions numbered 1, 2 and 3.

On the 15th day of November, 1905, A. L. Chambers and others procured from the Judge of the circuit court of Wyoming county in vacation a writ of *certiorari* against the county court of Wyoming county to review the judgment entered on the 9th day of October, 1905, respecting said election re-locating the county seat. On the 25th day of January, 1906, the petitioners, by counsel, moved the circuit court of Wyoming county to docket the said cause and it appearing that the said writ of *certiorari* was duly served was on that day entered as of the first day of the term. The defendants made return to said writ of *certiorari* and filed with said return a certified copy of the record of the proceedings in the matter of the contested election before the county court of Wyoming county on the 9th day of October, 1905. The contestees moved the court to quash the petition and said writ of *certiorari* and to dismiss the same as improvidently awarded and moved the court to confirm the action and judgment complained of in the case rendered on the 9th day of October, 1905, on the ground and for the reason that there was not shown by the record and proceedings of the county court of Wyoming county any such error in the judgment complained of as entitled the contestants to a reversal thereof, and the court having heard the arguments of counsel on said motion and inspected and examined the record and the proceedings in the cause was of opinion and decided that the judgment of the county court of Wyoming county ought to be sustained and entered its judgment ac-

cordingly and gave judgment in favor of the contestees against the contestants A. L. Chambers and others for costs. To which judgment the contestants obtained from this Court a writ of error and *supersedeas.* It is insisted by the contestants that the court erred in holding the order entered by the county court on the 8th day of June, 1905, calling the special election to be held on the 29th day of August, 1905, valid when an election for the same purpose and object had been held on the 8th day of November, 1904, and which last named election, having been contested, was undetermined and was pending in said circuit court on a writ of *certiorari* awarded by the circuit court at the time of the calling and holding of said special election. It appeared from the record that the contest of the first election was decided on the 24th day of December, 1904, by the county court of Wyoming county when it was "considered, determined and ordered by the court that the election held on the 8th day of November 1904 on the question of the re-location of the county seat of Wyoming county was not legally held and returned and is invalid and void." Nothing further was done in regard to said election but it stood on the final judgment of the county court until the 28th day of June, 1905, when a petition was filed for a writ of *certiorari* which was then awarded. It further appears from the record that on the 19th day of September, 1905, in the matter of the application for writ of *certiorari* to the county court of Wyoming county the plaintiffs in error in this cause, by their attorneys moved the circuit court to quash the petition and to dismiss the writ of *certiorari* therein as improvidently awarded which motion was resisted by the plaintiffs in said writ, when the motion was sustatned by the court, the petition was quashed and the writ dismissed as improvidently awarded and judgment rendered for these plaintiffs in error here, Chambers, Cook and others; hence, it clearly appears from the record that at the time of the calling of the special election of August 29, 1906, there was no matter pending in the circuit court of Wyoming county in relation to the said election held November 8, 1904, nor was it pending at the time of the canvassing of the result of the special election on the 9th day of October, 1905, in obedience to the peremptory writ of *mandamus.* It is conceded that the cause which

rendered the election of 1905 void was the failure of the commissioners of election at each place of voting to make out and sign a separate certificate of the result of the said election and deliver the same to the clerk of the county court, who should lay the same before the county court at its next session thereafter as provided in section 15, chapter 39, Code 1906, Annotated, which is held in *Welch* v. *County Court*, 29 W. Va. 63 to be mandatory and not directory. Under the rulings of this Court, especially in the case just cited, by such failure on the part of the commissioners of election to return in a separate certificate the result of the said election of November 8, 1904, upon the question of the re-location of the county seat of Wyoming county, the said election of November 8, 1904, was a nullity and could in nowise affect another and subsequent election properly called and conducted. See *Glasser* v. *Hackett*, 37 Fla. 358.

It is contended by the contestants that the court erred in overruling their objection to the bond attempted to be given on the 8th day of June, 1905, and the amended bond given July 1, 1905, and sustaining the judgment of the county court and holding that said bonds of either of them were sufficient to authorize the county court to call the special election for the re-location of the county seat and for holding the order calling said special election and the election held in pursuance of said order valid and legal when no bond had been given as required by the statute in case of a special election held for the purpose of voting upon the re-location of a county seat. The bond dated June 8, 1905, given by the petitioners for the special election was in the penalty prescribed by the statute and was given by the obligors and accepted by the county court in good faith and recites in a proper manner the purpose for which it was given. The condition of the bond is not in the exact language of the statute which provides that such bond shall be "conditioned to pay the legal costs of holding said election" while the bond in question was conditioned to "pay the expense of said election if said county seat be not removed by said election." The real difference in the condition of the bond laid down in the statute and that contained in the bond in question, excluding from the latter the words "if said

county seat be not removed by said election," if there is any material difference in that particular, is in the words "costs" in the statute and "expenses" in this bond. Here is a condition to pay the expenses of the election which must mean the legal, necessary expenses. In *Appeal of Jane*, 87 Pa. 428-430, "Costs" are defined as "Expenses which are incurred either at law or equity, consisting of fees of attorneys, solicitors, or other officers of court; and such disbursements are allowed by law."—See Words & Phrases, 1634.

It is contended that the further condition "if said county seat be not removed by said election" vitiates the bond. This further condition is not warranted by the law, the parties are executing a bond under the provisions of a statute, they have bound themselves to pay the expenses of said election. Is not that equivalent to a promise of agreement to pay the legal costs of the election? In *Furniture Co.* v. *McGuire*, 46 W. Va. 328 (Syl. pt. 3), it is held: "Where the condition of an official bond contains some valid provisions, and others not valid or warranted by law, the bad ones, if separable from the good, will be ignored." And also point 2: "The law in force at the time of the execution of a public bond is part of it, and the effect of it, in law, must be held to be known to its makers, as if in words incorporated therein." And in same case, point 5, it is held: "Where a court or officer has authority to take a bond, and makes a mistake by omitting some condition prescribed by law, or inserting a condition not authorized or illegal, unless the statute, by express words or necessary implication, makes it wholly void, the bond is not void; the good shall not be vitiated by the bad; and the bond may be sued on, so far as the conditions are good, as a statutory bond." And in *State* v. *Wotring*, 56 W. Va. 394. (Syl. point 2,) it is held: "A bond given under a statute must be construed, as to the scope of its obligation, to cover the objects of the statute in requiring it, if its words will at all allow such construction, and the statute is to be regarded a part of it." And as held in *Reed* v. *Hedges*, 16 W. Va. 167, (Syl. pt. 4): "Where a court or officer has capacity to take a bond, and makes a mistake by omitting some condition prescribed; or inserting some condition not authorized or ille-

gal, unless the statute by express words or necessary implication makes it wholly void, the bond is not void; the good shall not be vitiated by the bad, and the bond may be sued on, so far as the conditions are good, as a statutory bond." The bond is not void because it does not conform exactly to the provisions of the statute.—*Pratt* v. *Wright*, 13 Grat. 175; *Johnson* v. *Meriwether*, 3 Call 523. In 5 Cyc. 751, it is said: "If a bond is given under a statutory requirement it is not a necessary requisite to its validity that it should be conditioned in the precise language of the statute. So, where a bond is not in the language of the statute yet contains the substance of the statute the rest may be regarded as mere redundance. But in the absence of anything showing a different intention in the giving of a statutory bond it will be presumed that the intention of parties was to execute such a bond as the law required, and although its term may bear broader construction the liability of the sureties will be confined to the liability contemplated by the law in requiring such bond." And authorities there cited. And in 5 Cyc. 754, under the subdivision (d): "If a bond is given under the authority of the law, that which is not expressed but should have been incorporated is included in the bond, while that which is not required by the law is excluded. So a bond given under a code provision incorporates a condition of such code therein as fully as if it were made expressly a part thereof, for when an agreement is silent or obscure as to a particular subject, the law and usage become a portion of it, constitute a supplement to it, and interpret it; and this applies to a code provision which constitutes a limitation upon a surety's liability." And authorities cited.

As we have seen "unless the statute by express words or necessary implication makes it wholly void, the bond is not void; the good shall not be vitiated by the bad." After the county court had issued the call and almost two months before the time appointed for holding the special election the petitioners tendered and the county court accepted, approved and filed a bond dated July 1, 1905, which is sufficient in every particular in form and conditions, the only question as to its validity, being that it was not tendered and filed at the proper time. Contestants, by their counsel, contend that

the recital in the last named bond that the special election was, "on the 8th day of June 1905 ordered and directed" &c. to be held on the 29th day of August 1905, makes said bond "void upon its face." The statute does not provide that the bond shall be tendered or filed with or at the same time the petition is filed praying for the calling of a special election, but that at the same term the bond should be entered into and acknowledged. This bond was given and executed in aid of the bond given the 8th day of June, 1905, which did not conform in its condition with the exact language of the statute, but which bond under the authorities cited and as held by this Court was not absolutely void; and not being a void bond, even if the giving of the bond was jurisdictional, the order calling the special election was not thereby rendered invalid or void. The object of the bond is to insure the public against the costs of the election. The last bond being a voluntary bond of the obligors made on valuable consideration and not in violation of public policy or contravening any statute is not void. In *Bunneman* v. *Wagner*, 16 Ore. 433, (8th Am. St. Rep. 306,) it is held: "Bonds intended to be given in compliance with statutes, although not so given, if entered into voluntarily, and founded upon a valuable consideration, and not in violation of public policy or contravening any statute, will be enforced by common-law remedies." In *Munter* v. *Reese*, 61 Ala. 395, it is held: "Bonds executed to civil officers, in the course of judicial proceedings whether authorized by statute or not, if entered into voluntarily, supported by valuable consideration, and not in contravention of public policy or offensive to law, will be enforced by common law remedies." See also *Palmer* v. *Vance*, 13 Cal. 553; 1 Wade on Attachments, section 187; *Bank* v. *Wells*, 28 La. Ann. 736. However, the question of the liability of the obligors in the last bond does not here arise.

The petition for the special election of August 29, 1905, was prepared on several papers, all to the same effect and for the same purpose and signed by the petitioners praying for the election to be called on a certain day and all filed at the same term and treated as one petition. Now it is contended by the contestants that each paper was a separate pe-

tition and a bond should have been given by the petitioners or some one for them and on behalf of the petitioners on each paper. These several petitions all praying for a vote to be taken for a re-location of the county seat at the same place and asking for the election to be fixed at the same time constitute but one petition The provision of the statute that "the petitioners signing each of said petitions, if there be more than one, or some one for them" &c., means when there are petitions mentioning separate and distinct places to be voted for, for the re-location of the county seat. All the petitioners signing the petition for the particular location mentioned in their petition constitute one petition and those signing for another location constitute another petition, and it is only where there is more than one location sought to be nominated and voted for that there may be said to be two or more petitions and in such case there would be a bond for each of said places. So it follows that the court committed no error in requiring of the petitioners but one bond, all the papers signed mentioning the same place for the re-location constitute but one petition. There was no question raised as to the fairness of the election held on the 29th day of August. 1905, or as to any other irregularity than the fact that the bond given on the 8th day of June, 1905, was void because it did not contain the condition in the exact words used by the statute. In recounting the votes there was but one ballot found that was irregular and that was only because the clerks had not subscribed their names on the back of it, and that ballot was rejected. There is not the slightest intimation of fraud, corruption or improper conduct in ascertaining the will of the voters on the question submitted. There is no question but there has been a free and fair expression of the voters of Wyoming county on the subject of the removal of the county seat, on two separate occasions in two consecutive years, 1904 and 1905, and in both instances by a decided three-fifths vote they have expressed their desire to relocate the county seat at Pineville, and there should be good and valid reasons for overthrowing that will so expressed, at the polls before that will should be set aside. For the reasons herein given the judgment of the circuit court of Wyoming county is affirmed.

*Affirmed.*