GUY MCCARTNEY *v.* O. S. CAMPBELL

(No. 8053)

Submitted November 1, 1934. Decided December 22, 1934.

*Wyckoff & Wyckoff*, for appellant.

*Jed W. Robinson* and *Wm. T. George*, for appellees Samuel M. Musgrove and Margaret C. Moran.

MAXWELL, JUDGE:

This appeal involves only a question of costs, and is an aftermath of a prior decision of this court in the same cause. *McCartney* v. *Campbell*, 114 W. Va. 332, 171 S. E. 821.

Ordinarily, there may not be appellate review of a matter of costs alone, but the general rule "does not apply in a case involving clear abuse of the trial court's discretion in fixing costs." *Traugh* v. *Hart*, 113 W. Va. 388, 168 S. E. 137. Appellant seeks to bring this case within the exception.

In 1928, Campbell entered into a written contract with McCartney for the purchase of certain land of him. In 1932, McCartney brought two suits against Campbell, one to enforce specific performance of the said contract, and the other to enjoin Campbell from proceeding against him in unlawful entry and detainer. The causes were consolidated and upon a hearing therein McCartney failed in the trial court. By decree of March 31, 1933, the chancellor found that he was in arrears in his payments, declared the contract forfeited and awarded Campbell a writ of possession. Upon appeal, reference *supra,* this court held that there should not have been a forfeiture of the contract, but that McCartney should have been granted a day in which to pay the balance due.

Subsequently the circuit court, by decree of March 27, 1934, re-adjudicated the amount due from McCartney under the contract, granted him a day in which to pay, and directed that in default of such payment the land should

be sold at public sale by a special commissioner of the court, and assessed costs of the consolidated suits against McCartney. About a week before that decree was entered, Campbell and McCartney, without the knowledge of the court, entered into an agreement determining that the decree, which the contract recited was about to be obtained by Campbell, should not be executed with respect to advertising the property for sale until McCartney should have a reasonable time to try to borrow money to meet the emergency. McCartney failing to procure a loan, he and Campbell entered into another contract May 26, 1934, adjusting the differences between them. Campbell was recognized as the owner of the property and McCartney leased of him a portion thereof until September 1, 1934, at a fixed monthly rental. This being the situation, the special commissioner who was appointed by the court in the decree of March 27, 1934, to make sale of the property if McCartney defaulted, did not advertise the property for sale.

On the 12th of June, 1934, S. M. Musgrove, commissioner in chancery to whom the consolidated causes had been referred, and who took testimony and made a report to the court, and Margaret C. Moran, stenographer who rendered service in the taking and transcribing of testimony before the commissioner, moved the court to require the special commissioner to advertise the property for sale pursuant to the requirement of the decree of March 27, 1934. The basis of their motion was that McCartney had not paid to them certain fees for which he was obligated for services rendered by them, respectively, and which had been approved by the court. The Musgrove claim is for $35.00 and the Moran claim $93.50. The circuit court, by decree of June 29, 1934, sustained the motion and directed a substituted special commissioner to subject the property to sale as required by the decree of March 27, 1934. The defendant, O. S. Campbell, appeals from the said two decrees.

A number of procedural matters are presented, but none, we think, so controls the situation in respect of the status of the record as to preclude the court from passing

upon the merits of the controversy.

Civil trial courts are governmental institutions which have been created to enable persons peaceably to adjust their monetary and other property differences. The courts are open to all persons who feel aggrieved in their property interests or who desire to vindicate their rights. The seeker of justice comes voluntarily into court. It is only the one who is proceeded against who comes involuntarily, and even he, by filing a counterclaim at law or a cross-bill in equity, may place himself on the offensive rather than remain entirely on the defensive.

No person may abuse the process of a court; in seeking justice he must do justice. A litigant must make provision for court costs incurred by him unless he litigates *in forma pauperis*. A person who has invoked the process and authority of a court in respect of a controversy affecting his property rights and incurs costs in the course of the litigation and obtains an adjudication sustaining his contention, may not, by thereafter compromising with his opponent out of court, avoid liability for court costs which he has incurred; nor, by the same token, may he remove from the jurisdiction and control of the court the property which was the subject of the controversy and which afforded a basis of security for all court costs incident to the litigation.

In the matter at bar, Campbell, by filing a cross-bill, became a seeker for justice. His opponent honorably defended. Costs were incurred by both. Campbell prevailed. Thereupon, after a decree had been rendered directing that the property be sold and the proceeds of sale applied first to the payment of costs of the litigation and second to a decretal judgment for $1,683.90 in favor of Campbell, he and his adversary settled the controversy out of court, and, although Campbell seems to have discharged the costs which were assessed against him, no provision was made for the payment of costs charged against his unsuccessful opponent, McCartney, who apparently is insolvent.

A fund may be primarily liable for costs, as in *Insurance Co.* v. *Insurance Co.*, (Va.) 61 S. E. 870, or it may be

secondarily liable, as at bar. In cases of the instant class the fund, actual or potential, affords protection to those who render service in consequence of the court's requirements, whether under order of reference or otherwise. A party against whom liability for costs is adjudicated is not necessarily relieved by the fact that the costs may be, or are, paid out of the fund.

Proper expenses incurred in the execution of an order of reference and approved by the trial court, constitute a portion of the costs of the litigation giving rise to the reference. A fund or potential fund (in this case the land is a potential fund), available for payment of costs in a chancery cause, may not, in the absence of court approval, be withdrawn from the control of the court without provision having been made for all of the proper costs incident to the litigation. Efforts of litigants so to withdraw the property are futile. Therefore, we think the trial court was right when he held that the decree of March 27, 1934, directing sale of the property, remains in full force and should be executed.

We affirm the decree of the chancellor.

*Affirmed.*