MINNIE J. GARDNER

*v.*

ERNEST L. BAILEY, *State Road Commissioner of West Virginia*

(No. 9708)

Submitted October 2, 1945. Decided December 4, 1945.

332

*Ira J. Partlow,* Attorney General, and *W. Bryan Spillers,* Assistant Attorney General, for plaintiff in error.

*F. M. Stambaugh,* for defendant in error.

Fox, Judge:

On December 2, 1943, Minnie J. Gardner presented her petition in mandamus, to the Circuit Court of Kanawha County, seeking to obtain a peremptory writ of mandamus, requiring Ernest L. Bailey, as Road Commissioner of the State of West Virginia, to institute a legal and proper condemnation proceeding for the purpose of ascertaining the damages to petitioner's real estate described in her petition, resulting from the relocation of State Route No. 60, on the north side of Kanawha River, near and below the mouth of Campbells Creek in said county.

Paragraph I of relator's petition alleges that she is the owner of a lot of land containing 6,250 square feet, with a valuable residence situate thereon, and that said lot fronts seventy feet on the south side of a highway formerly a part of said State Route No. 60, as it existed before it was relocated, and that the highway on the former location had been constructed substantially level with said lot. From the evidence we learn that said lot was bounded on the south, east and west by land owned by J. Q. Dickinson & Company, which Dickinson land extended to and bordered on Kanawha River. Said route No. 60, as relocated, was constructed on the Dickinson land to the south of relator's lot and to the rear of her

dwelling. No part of relator's land was taken in such relocation. What may be termed old route No. 60 is retained as a permanent secondary highway, and provides access to the new road at nearby points, both east and west of relator's property. The petition then avers, in paragraph II the powers of respondent to acquire land for road purposes, and continues with paragraph IV which reads as follows:

"Acting under the authority conferred upon him by the Legislature, the said respondent caused a relocation of said Route No. 60, and abandoned the road or highway upon which petitioner's real estate abuts and relocated said highway, known as State Route No. 60, so that the same passed to the rear of petitioner's real estate which said project was known and designated as 'Project No. 221F' and that in the construction of said highway, known as Route No. 60, wrongfully and entirely abandoned the grade levels of said old road and by the construction of a fill raised the grade level of said new road so constructed in the rear of petitioner's said property approximately ten feet and as a result thereof said respondent diverted the surface water and drainage from a large portion thereof on and over petitioner's said property, making it a 'catch basin' for large volumes of water, making your petitioner's property practically into a quagmire and damaged it to the detriment of petitioner. All of which things were done by said respondent contrary to and in violation of Article 5 of the Constitution of the United States and Section 9, Article 3 of the Constitution of the State of West Virginia and statutes enacted in pursuance thereof."

Then followed an allegation to the effect that, notwithstanding the fact that the relocation had been completed for several months, no proceeding to ascertain the damages to relator, arising therefrom, had been instituted; and that it was the duty of the State Road Commissioner to institute such proceedings and that he had failed and refused to do so. The prayer of the petition is as stated above.

The rule to answer the petition aforesaid was awarded on December 2, 1943, returnable on January 25, 1944. On January 25, 1944, respondent filed his demurrer which, in effect, raises the question of the probable right of relator to damages by reason of the matters alleged in her petition. This demurrer appears to have been filed and set down for argument on January 25, 1944. On January 26, 1944, relator was granted leave to amend her petition, which she did by tendering a separate paper or petition, which, in effect, added to Paragraph IV of her original petition the language following:

"Petitioner, in addition to the matters and things set forth and alleged and averred in her original petition alleges the following facts and circumstances: that the said defendant, by re-locating and reconstruction of said State highway, the defendant has raised the grade on the south side of her property ten (10) feet and made a fill or build-up on the west side and abutting and adjoining her property, of approximately three (3) feet, thereby practically leaving petitioner's home in a 'hole'; and petitioner further avers that after the reconstruction and relocating of said State Highway No. 60, she has no means of ingress or egress to said public highway, that to gain ingress or egress to said public highway, it would be necessary for her to obtain a right of way or the consent of the owner of the land between her property and said public highway, and that by the acts of said defendant her home is not only a 'catch basin' for all surface water wrongfully diverted by the defendant from not only said public highway, but from adjacent and adjoining properties to the property of your petitioner but has also became and is a veritable 'dust bowl', accumulating the dust, dirt and filth that necessarily follows from the raising of the grade on the south side of her said property and on the west side of her said property by reason of the relocation and reconstruction of said highway.

"Petitioner also avers and alleges that in relocating said road petitioner has been de-

prived of a right of way to the Kanawha River which for a long time prior to the relocating of said road she held and enjoyed; and said petitioner further avers and alleges that prior to the institution of this action, the said defendant, and his predecessors in said office, has by *enroachment* taken approximately four (4) feet off the north side of her said property without paying anything therefor, which said property was so wrongfully taken and appropriated within the past five years, which said property so wrongfully taken and appropriated this petitioner is entitled to be paid a just, reasonable and fair market price of same."

On March 16, 1944, respondent filed his answer, in which he admits the allegations contained in Paragraphs Nos. I, II and III, but denies the allegations contained in Paragraphs Nos. IV and V thereof. On the same day the proceeding was heard on relator's petition, the amendment thereto, and respondent's demurrer and answer; whereupon the court referred the case to a commissioner in chancery to hear the evidence proffered by petitioner and respondent, respectively, upon the issues joined, and said commissioner was required to report to the court upon the following specific matters:

"First, whether the petitioner herein has, by the action of the respondent, in the relocation of State Highway No. 60, been denied and deprived of a reasonable means of ingress or egress to the petitioner's property;

"Second, whether the petitioner herein has been subjected to injury legally compensable by an award of damages by a wrongful act upon the part of the respondent herein in diverting surface waters from the State Highway No. 60 as relocated and constructed and from adjacent and adjoining lands to and upon the petitioner's property;

"Third, whether petitioner herein has been injured in a manner legally compensable by an award of damages by the accumulation of dust, dirt, filth and rubble made necessary by the relocation of State Highway No. 60 and con-

struction thereof in the vicinity of petitioner's land;

"Fourth, whether the petitioner herein has, by the act of the respondent herein in relocating and constructing State Highway No. 60 been denied and deprived of a reasonable means of access to the Kanawha River from his land;

"Fifth, whether the petitioner herein has been injured by a wrongful act of this respondent or his predecessor in office by appropriating and wrongfully taking a portion of the petitioner's land within five years from the date of the institution of this action without payment or agreement to pay therefor."

The commissioner filed his report on September 27, 1944, and answered in the negative questions, first, second, fourth and fifth submitted to him by the court; but answered question third in the affirmative. At no time was there any objection to the reference of the proceeding to a commissioner in chancery. Exceptions to the commissioner's report were taken by respondent, all of which were overruled, and on November 25, 1944, a peremptory writ was issued as prayed for, and costs were awarded relator. To the action of the court below we granted this writ of error.

The first question to be considered is one of procedure. While not assigned as error by either party, we consider the reference of a proceeding in mandamus to a commissioner in chancery as an unusual and radical departure from the heretofore accepted practice in such cases, and so much so as to warrant us, *ex mero motu*, to register our disapproval thereof. Mandamus is an extraordinary remedy. It will be awarded or denied according to the law and facts of the case. Code, 53-1-8. It is classed as a law action, but one in which the appeal is to the conscience of the court having jurisdiction to hear it. We do not think it was ever intended that the duty of making a finding on facts in such a case could be delegated to anyone. Where a case is submitted to a commissioner in chancery, regular or special, and, as in

this case, certain questions are submitted to him on which he is required to take evidence and report, such report will always be given weight, and, in many instances, will be conclusive. That amounts to the commissioner influencing, and often determining, the dispute, when, as we think, such decision rests and should rest wholly with the court. Therefore, in the exercise of our powers of supervision over the courts of the State, we take this occasion to register our disapproval of referring mandamus cases to commissioners in chancery, regular or special. If, in such a case, questions of fact arise, requiring the taking of evidence, and it is not convenient for the court to hear the same at the bar, the taking of depositions is always in order; or, in unusual situations, the selection of a special master to take testimony may be justified, without delegating any right or power to make any finding on the testimony so taken. The duty of making any finding on the testimony so taken rests solely upon the court. In this view of the case, we treat the report of the commissioner in chancery on testimony taken in the hearing had before him, and the evidence, as well, as of no force and effect in the controversy before us.

But even if we should treat the condemned proceeding as regular and proper, and consider both the testimony taken, and the report of the commissioners, in determining this controversy, we do not believe the facts developed warranted the court in awarding a peremptory writ of mandamus. Relator relies on *Riggs* v. *State Road Commissioner*, 120 W. Va. 298, 197 S.E. 813. The words "probable damage" were used in that opinion, and, of course, compensable damage was in the minds of the court. We do not doubt that relator's property is less valuable than it was before the relocation of State Route No. 60, but such diminution does not, in our opinion, result from any act of the State for which, under Section 9 of Article III of our Constitution, the State is required to pay compensation. Not every damage to real estate is compensable. It is common knowledge

that in the relocation of our highways property of many persons is left in situations less advantageous to the owners. A hitherto prosperous business may be left on a side road to wither and die, yet the owner has no relief. *Dick* v. *City of Hinton,* 109 W. Va. 708, 156 S.E. 81; *Richmond* v. *City of Hinton,* 117 W. Va. 223, 185 S.E. 411; *Heavener* v. *State Road Commission,* 118 W. Va. 630, 191 S.E. 574. How, in the circumstances of this case, can we say that, in a condemnation proceeding, it is probable that an award of damages to the relator would, as a matter of law, be permitted to stand? The commissioner in chancery, to whom this cause was referred, found only one ground upon which he expressed the opinion that the relator might be entitled to damages, and that was his answer to the third question, on which he was required to report, namely, for the accumulation of dust, dirt, filth and rubble, made necessary by the relocation of State Highway No. 60, and the construction thereof in the vicinity of relator's land. Just how the relocation of State Route No. 60, and the raising of the roadbed some ten feet, near the bank of Kanawha River, and entirely beyond the boundaries of relator's premises could have created the condition complained of is not disclosed by the evidence. It would appear that the change may benefit relator's property in that respect rather than injure it, for the reason that it may be expected that the greater amount of traffic will pass over the new location in preference to the old route in front of and on a level with relator's property. Then, in connection with this claim, Mordica Gardner, principal witness for relator, said: "Well, those are just small damages that I am not holding against the State at all. It's only the—that property damage of leaving me down in a sink hole and also the property the State has confiscated that hasn't been paid for, which is two suits that they owe me for property they have taken and not paid for and they owe me for property damage, I think, because they left me down in a sink hole." Whether this statement is binding upon the relator need not be discussed, for the record discloses that relator

knew little or nothing about this controversy, and that her interests therein were being handled by her son, Mordica Gardner. His testimony clearly shows that he he did not base any claim whatever upon the facts which the commissioner thought were the only ground on which compensation could be awarded.

The State is not responsible for the location of relator's property. It is not responsible for the situation of that property with respect to natural drainage. There is no proof in the case indicating that relator had right of access to the Kanawha River over the Dickinson land, which the relocated highway is alleged to have cut off. The record clearly shows that relator has, and will continue to have, reasonable access to and from her property from both east and west and nearby connections, in both directions, with the newly located highway. Any part of relator's land which has been taken in the improvement of State Route No. 60 on its old location was so taken more than five years before the institution of this proceeding, and cannot now be considered. If the lot has the appearance of a junk yard, it is difficult to conceive how the relocation and construction of the new highway could have brought about that condition, unless through fault of the contractor on the new location, and no one contends that the State, under the constitutional provision cited above, is responsible for such damage. No authority has been cited for the proposition that the State should pay compensation on account of noise, dust or other inconvenience suffered through the location of a state highway on the premises of a party other than the one seeking compensation. On the whole, we are of the opinion that, considering the entire record, if it were proper to do so, relator has failed to show that her property has been damaged through the relocation of State Route No. 60 in such manner as entitles her to compensation from the State, under the provisions of Article III, Section 9 of our Constitution.

The court awarded costs against the respondent. Our reversal of the court's action in granting the per-

emptory writ of mandamus avoids the order imposing costs. Even if we should sustain the granting of the writ by the trial court, we do not think costs could be awarded against the State in a proceeding of this character. The rule is well established that costs will not be awarded against the State, unless there is express statutory authority therefor. *Governor* v. *Powell*, 23 Ala. 579; *State* v. *Kinne*, 41 N. H. 238; *State* v. *Williams*, 101 Md. 529, 61 A. 297; *Deneer* v. *Unverzagt*, 225 Ill. 378, 80 N. E. 321; 4 Amer. & Eng. Ency. of Law, 316; 14 Am. Jur. 22. There is no statutory authority for the award of costs against the State in a proceeding of this character, and, in fact, there is no statutory authority for the proceeding itself. Such authority, in this State, rests largely upon our holding in *Hardy* v. *Simpson, Road Commissioner*, 118 W. Va. 440, 190 S.E. 680, 191 S.E. 47.

The judgment of the Circuit Court of Kanawha County entered on the 25th day of November, 1944, is reversed and this proceeding is remanded to said court for further proceedings not inconsistent with this opinion.

*Reversed and remanded*