NELLIE E. MAXWELL, *et al.*

v.

MARVIN STALNAKER, *et al.*

(No. 10842)

Submitted January 22, 1957. Decided March 5, 1957.

556

*Jacob S. Hyer, Milford L. Gibson,* for appellants.

*John G. Fox,* Attorney General, *Fred H. Caplan,* Assistant Attorney General, for appellees.

GIVEN, JUDGE:

On September 4, 1951, plaintiffs Nellie E. Maxwell, Robert E. Maxwell and the Public Land Corporation of West Virginia, a public corporation, filed their bill of complaint in the Circuit Court of Randolph County against Martha Stalnaker, Wilbert B. Wamsley, Upton Mace, Roy Mace, Paul Mace, Joseph Mace, Ada McQue, Summers R. Hill, Floyd Mace, Roland B. Stalnaker, Ella Collett, Addie Reed, Delmar S. Yokum, Della Daniels Gibbs, Berlin M. Yokum, Gretta Gay Alkire, Palmer R. Yokum, Myrtle Margon and Edgar B. Sims, Commissioner of Delinquent and Forfeited Land, defendants, praying the partition or sale of a tract of land containing 2,387 acres, situated in that county. The bill alleged that the land was "not subject to partition in kind and allotment", and prayed that a sale thereof be decreed, and that the proceeds of sale be divided among the respective owners of the undivided interests therein.

On March 12, 1952, the court entered a decree in the cause adjudicating ownership of the respective undivided interests in this language: "Public Land Corporation of West Virginia, a public corporation, 154/156 and 2/468; Roland B. Stalnaker 1/468; Addie Reed 1/1092; Delmar Yokum 1/1092; Della Daniels Gibbs 1/1092; Berlin M. Yokum 1/1092; Gretta Gay Alkire 1/1092; Palmer R. Yokum 1/1092; Myrtle Margon 1/1092". The court found "from the pleadings previously filed in this cause and from the matters offered and heard by the court", and further decreed, that the tract of land "is not susceptible to partition in kind", that it "cannot be conveniently alloted in kind", and that the land "be sold, and from the proceeds of said sale pay the court costs of this suit". Stanley Bosworth and Robert E. Maxwell were appointed special commissioners to make the sale, and the terms,

manner and condition of sale were fully set out in the decree.

By report dated August 28, 1952, the special commissioners reported that after having advertised the sale and after having offered the land for sale in the manner required by the decree, a bid for the tract of land was received from the Conservation Commission of the State of West Virginia in the amount of $27,000.00, which was the only bid received at the sale; that the special commissioners announced at the time of sale that the bid "was insufficient and inadequate" and that the special commissioners would not recommend confirmation of the sale. Thereafter, the Conservation Commission of the State of West Virginia, by letter of July 14, 1952, increased its bid for the entire property to $95,-480.00, and stated in the letter, "Hope the court will see fit to confirm this sale without any further delay". The report recommending confirmation on the increased bid contained this paragraph: "Your Special Commissioners would further represent, that in event the court so desires to confirm said sale that the proper part of the purchase price bid by the purchaser, the costs and commissions as taxed, be paid by the purchaser upon delivery of the deed by the Special Commissioners and to this extent your Special Commissioners would report that as yet they have not received any money from the purchaser and would recommend unto the court that it indulge the purchaser in this regard and decree that said purchase money of eight hundred sixteen dollars and ten cents ($816.10) and the costs of four thousand nine hundred and fifty dollars and twenty-one cents ($4950.21) as itemized, or a total sum of five thousand seven hundred sixty-six dollars and thirty-one cents ($5766.31) shall be paid upon delivery of the deed." Included in the sum requested to be paid to the special commissioners was the amount of $816.10, the proportional part of the sale price payable to owners other than the State. The costs, amounting to $4,950.21, were itemized, from which itemization it appears that $4,774.00 was for commis-

sions to the special commissioners for making the sale, or five per cent of the sale price of $95,480.00.

By decree of August 28, 1952, in accordance with the recommendation of the special commissioners, the sale was confirmed by the Circuit Court of Randolph County, and the special commissioners were directed to execute and deliver an apt and proper deed conveying the tract of land to the State of West Virginia. This decree contained this paragraph: "It further appears to the court and it is accordingly adjudged, ordered and decreed that the State of West Virginia at the time of said sale was the owner of all of the outstanding interests except a 1/468 interest and a 1/156 interest that was outstanding to Roland B. Stalnaker and the heirs of Martha Yokum, respectively, the other interests having been acquired by the State of West Virginia by several mesne conveyances before and after the institution of this chancery cause, and in view of the outstanding interests as compared with the interest owned by the State of West Virginia, the costs and purchase money owing to owners of the outstanding undivided interests at the time of said sale amounts to a total of five thousand seven hundred and sixty-six dollars and thirty-one cents ($5766.31), and the State of West Virginia is required to pay over unto the said Special Commissioners only the sum of five thousand seven hundred and sixty-six dollars and thirty-one cents ($5766.31) rather than the total purchase price as bid aforesaid." The commissions, amounting to $4,774.00, were included in the sum of $5,-766.31. The requirement of the payment of such commissions by the State is the basis of this controversy. No exceptions were made to the report of sale, or to the action of the court in decreeing or confirming the sale.

By a bill of review filed in the Circuit Court of Randolph County on April 27, 1953, the Public Land Corporation of West Virginia prayed that the decree mentioned above be reviewed and reversed, for the following reasons: "First: The court erred in decreeing that the whole tract of land involved herein be sold, rather than by

offering to allot the same to the State of West Virginia, by plaintiff, Public Land Corporation of West Virginia, should the State of West Virginia, be willing to accept the same and pay to the other parties such sums of money as their interests therein may have entitled them to.

"Second: The court erred in allowing to the special commissioners mentioned above an excessive fee for the services performed by them." Thereafter, the proceeding was transferred to the Circuit Court of Hardy County.

After the transfer of the cause to the Circuit Court of Hardy County, the special commissioners filed their demurrer to the bill of review, on the grounds, generally, that the matters complained of were not reviewable by bill of review, and that the commissions allowed by the Circuit Court of Randolph County were not excessive. The circuit court overruled the demurrer and certified questions arising thereon to the Supreme Court of Appeals of West Virginia. That Court refused to docket the case. Thereafter, the special commissioners filed their answer to the bill of review, to which answer the Public Land Corporation of West Virginia filed its demurrer, which demurrer was sustained by the Circuit Court of Hardy County. In disposing of the cause on the merits, the Circuit Court of Hardy County reduced the amount of the commissions from $4,774.00 to $200.00, and made certain other minor modifications of the decrees of the Circuit Court of Randolph County, complained of in the bill of review, seemingly immaterial now, in view of the conclusions reached by this Court.

The controlling question relates to whether there exists, on the face of the record, error of law for which a bill of review will lie. Two such errors are contended by the State to be shown, the failure of the Circuit Court of Randolph County to make allotment in kind, at least as to the interest in the tract of land owned by the State; and that, in no event, can the commissions of sale be decreed as costs against the State.

As early as *Amiss* v. *McGinnis, et al.,* 12 W. Va. 371, this Court held: "1. There are but two causes, for which a bill of review will be admitted or allowed, and they are either error in law, appearing on the face of the decree, or some new matter, which has arisen in time after the decree, and not any new proof, which might have been used, when the decree was made, by the exercise of reasonable diligence." That holding has been followed unwaveringly. See *Roy* v. *Bennett,* 141 W. Va. 260, 89 S. E. 2d 843. In the instant case we must determine only whether there is "error in law, appearing on the face of the decree", necessary to permit the filing of a bill of review and to permit a review of the matters therein complained of, no question as to any "new proof" being involved.

We think there is no substantial merit in the contention that the failure of the Circuit Court of Randolph County to make an allotment in kind consituted an error in law justifying the filing of the bill of review. While Code, 37-4-3, as amended, provides for an allotment in kind where partition can not be conveniently made, the right of any owner to have such an allotment is by the statute made to depend on a number of contingencies. None of such contingencies was made to appear. Moreover, the right to an allotment in kind may be waived by the owner. *Roberts* v. *Coleman,* 37 W. Va. 143, 16 S. E. 482. See *Garlow* v. *Murphy,* 111 W. Va. 611, 163 S. E. 436. In the instant case, the State made no request for an allotment in kind, made no objection to the action of the court in decreeing the sale of the whole tract, though the court decreed that the "real estate can not be conveniently allotted in kind", and expressly requested that the court "confirm the sale without further delay".

Was the decreeing of commissions a part of the costs of the proceeding, and the taxing of the same against the State, plain error of law on the face of the decree? To resolve this question, we must say whether (1) such commissions constitute "costs" of the proceeding; (2) if costs, whether the amount of such commissions is

clearly excessive; and (3) if costs, whether taxable against the State.

No serious difficulty is encountered in reaching the conclusion that under our practice and statutory provisions, such commissions must be treated and taxed as costs of the proceeding wherein they occur. Code, 55-12-6, deals specifically with allowances to be made by the court to commissioners for making sale under any order, and Code, 37-4-1, as amended, dealing specifically with partition of real property, provides that: "In all such cases resulting in partition or sale the costs of suit shall come from the proceeds of sale". This language seems to leave no doubt that such charges are to be treated as "costs of suit", and that the owners of real estate should be chargeable therefor in the proportions that their respective interests therein relate to the whole. This is the usual, if not the universal, practice in this State. See *McCartney* v *Campbell*, 115 W. Va. 752, 177 S. E. 783; *Cresap* v. *Brown*, 82 W. Va. 467, 96 S. E. 66; *Chambers* v. *Cline,* 60 W. Va. 588, 55 S. E. 999.

As above noticed, the amount of commissions adjudged as costs by the Circuit Court of Randolph County was five per cent of the purchase price, upon which the sale was confirmed, $95,480.00. Code, 55-12-6, provides that commissioners, in such cases, "shall not be allowed any greater commission than five per cent of the amount received by them, unless the court otherwise order". The contention is made that the amount of the commissions is plainly excessive, for the reason that the amount thereof is five per cent of the purchase price, not five per cent of the lesser amount actually "received" by the commissioners under that part of the decree of the court quoted above. We think the position is not tenable. While it is true that the full purchase price was not physically turned over to, or handled by, the special commissioners, we think it clear that the price bid was paid and received in the sense intended by the statute. The procedure followed was merely for the convenience of the parties in the payment of the purchase price and, in

contemplation of law, the purchase price was "received" by the special commissioners and paid over to the purchaser. To hold otherwise would enable a person owning an interest in a tract of land often to escape his just proportion of the costs of partitioning the same, or result in an unnecessary practice of such a person being required to deliver physically the purchase price to the special commissioners, and a return thereof, less the proportional part of the costs, by the commissioners to the purchaser, in many cases, perhaps, resulting in additional and unnecessary costs to the parties.

In the instant cause, the record indicates a large amount of work on the part of the special commissioners, in that a number of small undivided interests in the large tract of land were involved, and in that the tract of land was, by the decree of sale, required to be offered for sale in sundry parcels, as to the minerals under each parcel, and as to the surface and timber of each parcel, necessitating a temporary plan or division of the tract, and necessitating additional time and labor in preparing for the sale, in making the sale, and in preparing reports thereof. In such circumstances, we can not say that five per cent of the sale price, though the maximum allowable under the statute, in the absence of some special showing, was clearly excessive. The trial court having so viewed the facts and having so ordered, we can not say it was in error. "A court of equity has inherent power and wide discretion to adjudicate the payment of costs." Opinion, *Mairs* v. *Central Trust Co., Trustee,* 127 W. Va. 795, 806, 34 S. E. 2d 742, 748. See Code, 59-2-11; *Lay* v. *Phillips,* 116 W. Va. 60, 178 S. E. 523.

The holdings of this Court are to the effect that costs in an action or suit, though the State be a party thereto, can not be assessed against the State unless a statute authorizes such assessment. *State of West Virginia* v. *Blevins,* 131 W. Va. 350, 48 S. E. 2d 174; *Gardner* v. *Bailey,* 128 W. Va. 331, 36 S. E. 2d 215; *State of West Virginia* v. *Sanders,* 128 W. Va. 321, 36 S. E. 2d 397. These holdings follow the general rule. "In the absence

of statutes expressly or by necessary implication providing otherwise, as a general rule costs may not be awarded against a state or its agencies in actions to which it or its agency is a party." 81 C.J.S., States, Section 234.

Code, 37-4-1, as amended, dealing specifically with matters pertaining to partition of real property, contains this provision: "In all such cases resulting in partition or sale the costs of suit shall come from the proceeds of sale". This language appears clear and precise, containing no exception as to the State or its agencies. No exception should be read into it by the Court. The result intended appears plain and just. We think of no reason why the State, in such a proceeding as this, should not be made subject to its equal and fair proportion of taxable costs. It could have demanded allotment in kind, and, upon proper showing, a sale of its interest might have been avoided. It elected, however, to have its interests sold, and should now be required to bear its just proportion of the burden. The statute requires that it do so.

Finding no error of law on the face of the record justifying the filing of the bill of review, the final decree of the Circuit Court of Hardy County is reversed and the bill of review dismissed.

*Reversed; bill of review dismissed.*