AMANDA MAXINE PATTERSON

*v.*

EDWARD JAMES PATTERSON

*And*

SARAH FRANCES MATTHEWS

(No. 14985)

Decided May 5, 1981.

*James M. Cagle* for appellants.

*Charles T. Bailey* for appellee.

NEELY, JUSTICE:

## INTRODUCTION

This appeal from a judgment in a domestic relations case presents a new and important issue. Concisely stated, the issue is whether a suit to impress a constructive trust upon property can be joined in a suit for divorce. We see no reason why the court awarding a divorce cannot also impress a trust upon property when the spouse seeking the trust has contributed either money or services to the purchase of the property.

At the outset it must be emphasized that our simple holding concerning joinder of claims does not convert West Virginia into a jurisdiction akin to a community property state. We have always followed the rule that in a divorce proceeding the circuit court does not have jurisdiction to transfer title to real property as a substitute for alimony or child support, or in addition to alimony and child support as equitable compensation for loss of the advantages of the marriage state. This is the general rule and will continue to be the law. We have held, however, in the case of *McKinney v. Kingdon,* 162 W.Va. 319, 251 S.E.2d 216 (1978), that title to personal property such as automobiles which have a short usable life may be transferred since such a transfer is merely the equivalent of an award of alimony.

The case before us involves Mr. and Mrs. Patterson, a husband and wife who, according to evidence introduced by the wife, were, for practical purposes, business partners. They both worked in the family business; with the wife's acquiescence proceeds were taken from the business and invested in new pieces of property; and, in other ways both parties behaved exactly as two unmarried individuals would have behaved if they had entered into partnership. While the partnership was informal and devoid of written agreements, it was similar to arrangements which are rather commonplace in the operation of a small business.

The evidence introduced by Mrs. Patterson showed that her situation differed significantly from that of the

ordinary housewife not involved in such a partnership. Her labor comprised more than the routine duties that a housewife normally performs such as taking care of children, entertaining business friends, and otherwise being supportive of her husband who earned a living in the workaday world. Her evidence showed that she was an actual partner with her husband; she was physically present with him in his place of business; she engaged in activities of a business character for which employees are customarily compensated; and her activities contributed materially to the advancement of the business and were of a substantial nature, requiring long hours of arduous labor. Lastly there was no evidence that Mrs. Patterson was ever compensated, as a business employee is normally compensated, for her services which, absent evidence to the contrary, gives rise to the inference that she expected her husband to act in her fiduciary interest.

We wish to point out as emphatically as possible that the property which the Circuit Court of Logan County impressed with a trust in favor of the wife was business property in which the wife had an interest because of her active, diligent, and regular participation in the business. All wives contribute to their husbands' business by providing a home, taking care of the children, entertaining business friends, and otherwise being supportive of the husband; however, these types of activities do not give rise to a claim against property which the husband has purchased with his own money, notwithstanding that he earned it with the help of the wife.

We distinguish business participation and domestic services because the law of domestic relations has developed the remedy of alimony for compensating a wife for her previous contribution to the family as wife, mother, and homemaker and for her loss of the advantages of the married state. *Haynes v. Haynes*, 164 W.Va 426, 264 S.E.2d 474 (1980); *Dyer v. Tsapis*, 162 W.Va. 289, 249 S.E.2d 509 (1978). Only when a wife (or husband) has contributed her (or his) own separate funds, either acquired during the marriage or before the marriage, or has contributed direct business services of a type which an employee or partner

of the same sex would contribute, may a trial court impress the type of trust which we shall discuss below.[1]

## FACTS

This is an appeal by Edward James Patterson and his daughter, Sarah Frances Matthews, from an order of the Circuit Court of Logan County which disposed of two consolidated cases. The first case was a divorce proceeding instituted by Amanda Maxine Patterson against her husband and the second was a property action in which Mrs. Patterson petitioned the court to set aside two deeds from Mr. Patterson to Sarah Frances Matthews, his daughter by his first marriage, and declare a trust in Mrs. Patterson's favor in that property.

Mr. and Mrs. Patterson were married in 1953 and from then on engaged in the retail grocery business at various places in Logan County. It was that grocery business which provided their primary source of income, but in 1962, using profits jointly earned in the grocery business, Mr. Patterson purchased a tract of land in Island Creek

---

[1] We do not disturb the possibility that a judge may award the use of the family house where the wife or the husband is the homemaker. While title to the fee of the real estate may not be taken from the husband and vested in the wife for alimony alone, *Games v. Games,* 111 W.Va. 327, 161 S.E. 560 (1931), a court may give the wife or the husband an annual allowance or life estate in the realty. *Reynolds v. Reynolds,* 68 W.Va. 15, 69 S.E. 381 (1910). More recently, we have held that an order giving the wife and children the use of a house may be entered, although the court noted that a life estate was not created. *Kinsey v. Kinsey,* 143 W.Va. 574, 103 S.E.2d 409 (1958). This proposition has been upheld by our Court in *Murredu v. Murredu,* ___ W.Va. ___ 236 S.E.2d 452 (1977). To the extent that *Murredu* limits the authority to grant exclusive possession of the home property to one spouse incident to obtaining custody as suggested in *State ex rel. Collins v. Muntzing,* 151 W.Va. 843, 157 S.E.2d 16 (1967) and *State ex rel. Hammond v. Worrell,* 144 W.Va. 83, 106 S.E.2d 521 (1958), we expressly state that a spouse may receive a life estate subject to remarriage in the home property regardless of any custody of children. As we stated in *Dyer v. Tsapis,* 162 W.Va. 289, 249 S.E.2d 509, (1978) the spouse who is no longer young, who has no occupational skills, and who has devoted time to his or her role as a homemaker has a greater claim to an award of alimony. Therefore, we wish to ensure that a trial court be empowered to award a life estate to a deserving spouse, subject to remarriage.

District, Logan County. In 1966, again using profits jointly earned, he purchased a second parcel in Logan District. Both pieces of property were titled in his name alone and on both parcels he operated laundromats.

In 1974, after the divorce proceedings between the parties had been instituted, Mr. Patterson conveyed the two parcels of property in question to Sarah Frances Matthews for $4,500.00. It is not seriously argued that the purchase price represented fair market value; the record demonstrates that the income from both pieces of property in 1973, the year immediately before the transfer, was $18,343.00.

In early March 1974, Mr. Patterson sued Mrs. Patterson for divorce in the State of Nevada. On 25 March 1974 Mrs. Patterson sued the appellant for divorce in Logan County; however, on 16 April 1974, before the Logan County action was complete, Mrs. Patterson received a divorce decree from the Nevada Court. The Circuit Court of Logan County found that the Nevada Court did not have jurisdiction of the subject matter because Mr. Patterson was not a *bona fide* resident of Nevada and, consequently, did not afford that decree full faith and credit.

The circuit court ruled that Mrs. Patterson was entitled to a divorce on the ground that the parties had lived separate and apart for one year and the court also held that the transfers of property from Mr. Patterson to his daughter were fraudulent and declared a trust in the property in favor of Mrs. Patterson. Mr. Patterson appeals on the grounds that the circuit court erred in: (1) entertaining the property dispute in the same proceeding as the divorce; (2) declaring a trust in the property; (3) failing to give full faith and credit to the Nevada decree; and, (4) concluding that the conveyance from Mr. Patterson to his daughter was fraudulent.[2]

---

[2] The appellants also challenge the service of process in the divorce case. We note that they appeared generally, and we conclude that by so doing they waived the defect in the service.

## I

The primary question presented is an important one of procedure, namely whether a circuit court has authority to entertain a cause of action to impress a trust in favor of one spouse on property owned by the other spouse during the course of a divorce proceeding.[3] Notwithstanding precedent to the contrary, we hold today that it does. *State ex rel. Collins v. Muntzing*, 151 W.Va. 843, 157 S.E.2d 16 (1967) and *State ex rel. Hammond v. Worrell*, 144 W.Va. 83, 106 S.E.2d 521 (1958) are, therefore, overruled in this regard.

Our statutes formerly gave the trial court almost unlimited control over the property of the parties in a divorce proceeding. Section 11, Chapter 64, *Barnes' Code*, 1923. *Philips v. Philips*, 106 W.Va. 105, 144 S.E. 875 (1928). The present statute is clearly more restrictive and the court may alienate title to property only to the extent necessary to enforce decrees for alimony and maintenance. However, as our Court noted in *Selvy v. Selvy*, 115 W.Va. 338, 177 S.E. 437 (1934), a bill of complaint may contain allegations that would rest the jurisdiction not upon the divorce statute 48-2-15 [1980], but upon the general equity jurisdiction embodied in 48-2-21 [1969], (then 48-2-19) which allows the court to restore to either party his or her property. As we said in *McKinney v. Kingdon, supra,* a circuit court is authorized to award ownership of personal property when there is a specific request for specific property.

---

[3] While the trial court in the instant case consolidated a divorce proceeding with a suit for the declaration of a constructive trust, the appellants challenge that consolidation by raising our cases prohibiting joinder of divorce suits with property proceedings. We, therefore, address the joinder aspect of the case.

We note that under R.C.P. Rule 42(a) two actions before the same court may be consolidated if they involve either a common question of law or a common question of fact. As we shall later discuss in the joinder context, we find common questions of fact in the Patterson divorce proceeding and Mrs. Patterson's suit for a constructive trust. We, therefore, find that the consolidation here was proper.

Under R.C.P. Rule 42(a) consolidation is permissive and discretionary with the trial court. *See,* Lugar and Silverstein *West Virginia Rules* at 342 *et seq.* (1st ed. 1960).

Comparatively recent cases on the joinder of property actions with divorce proceedings have been inconsistent. In *Wood v. Wood*, 126 W.Va. 189, 28 S.E.2d 423 (1943), the Court recognized that the trial court properly could adjudicate property questions in a divorce proceeding. The Court said:

> "Certain evidence offered by the defendant, however, is apparently based on the theory that the plaintiff holds exclusive title to certain real estate as to which the defendant claims some equitable or other interest, and certain personalty which she claims to own outright. But nowhere does she plead such facts or claim. There is a statute, however, under which such a claim might have been adjudicated in this suit: 'Upon decreeing the annulment of a marriage, or upon decreeing a divorce, the court shall have power to award either of the parties whatever of his or her property, real or personal, may be in the possession, or under the control, or in the name, of the other, and to compel a transfer or conveyance thereof as in other cases of chancery.' Code, 1931, 48-2-19, as amended by Chapter 35, Acts of Legislature, 1935." *Wood v. Wood*, 126 W.Va. 189, 192-93, 28 S.E.2d 423, 425 (1944).

The 1935 *Code* section *W.Va. Code*, 48-2-19 [1931] cited in *Wood* is now *W.Va. Code*, 48-2-21 [1969].

In the later case of *State ex rel. Hammond v. Worrell*, *supra*, the Court, after mentioning *W.Va. Code*, 48-2-19 [1931], indicated that the Legislature had enacted *W.Va. Code*, 48-2-15 [1931] concerning orders regarding the maintenance of parties. We concluded that because of the provisions of *W.Va. Code*, 48-2-15 [1931] and because a divorce court's jurisdiction was purely statutory, a circuit court acting as a divorce court lacked jurisdiction in a divorce proceeding to order the partition of real property. In so ruling the Court ignored *W.Va. Code*, 48-2-19 [1931] which was then in effect. It also ignored the remarks in *Wood*, *supra*, concerning that section.

In the later case of *State ex rel. Collins v. Muntzing*, *supra*, the Court again noted that *W. Va. Code*, 48-2-15

[1931], conferred limited jurisdiction on a divorce court. The Court held that the Rules of Civil Procedure could not be construed to extend the jurisdiction of the divorce court. In both *Hammond* and *Collins* the Court ignored the fact evident to the writer of *Wood* that both *W. Va. Code*, 48-2-15 [1931] and *W. Va. Code*, 48-2-19 [1931] conferred jurisdiction, of differing types, on the divorce court. *Selvy v. Selvy, supra.*

At the time of the decisions in *Hammond* and *Collins* the question of jurisdiction was of crucial significance, for there were then courts of limited jurisdiction, some of which had jurisdiction to hear only family matters.[4] After the decisions in the *Hammond* and *Collins* cases, the West Virginia Judicial Reorganization Amendment was adopted. That amendment eliminated courts of limited jurisdiction so that all courts hearing domestic matters became circuit courts of general jurisdiction. *W.Va. Const.*, art 8, § 6.

In the reorganized court system in most instances, the same circuit judge will, as a practical matter, hear all matters arising between a husband and wife as a result of their marriage, since that circuit judge, by the *Constitution*, now has jurisdiction to hear all civil matters. We see no sense in requiring him to wear separate hats and to conduct separate hearings, one to determine divorce, alimony and child support, and another to adjudicate equitable claims to property where the legal title is in one spouse, when the separate proceedings might easily be joined. There is no longer any jurisdictional impediment to joinder, if there ever were, and that joinder will promote efficiency and economy. We, therefore, hold that henceforth property proceedings may properly be joined with divorce questions. We note, and hold, that under Rule 18, *W. Va. R.C.P.*, such joinder is permissive and not obligatory.[5]

---

[4] In 1973 there were special domestic relations courts in Kanawha and Cabell Counties. There were other courts of limited jurisdiction in Hancock, Harrison, Marion, Marshall, Mercer, McDowell, Ohio, Raleigh, and Wood Counties.

[5] While under *R.C.P. Rule* 81 certain of the Rules do not apply to domestic relations proceedings, *R.C.P. Rule* 18 does apply. The chief

## II

Mr. Patterson and his daughter assert that the trial court's order declaring a trust was improper because the declaration of a constructive trust violated our rule that transfers of property between spouses are presumptively gifts. *W. Va. Code*, 48-3-10 [1931].

The requisites of a constructive trust are delineated in 5 *Scott on Trusts*, § 404.2 as follows:

"A constructive trust is imposed where a person holding title to property is subject to an equitable duty to convey it to another on the ground that he would be unjustly enriched if he were permitted to retain it. The duty to convey the property may arise because it was acquired through fraud, duress, undue influence or mistake, or through a breach of fiduciary duty, or through the wrongful disposition of another's property. The basis of the constructive trust is the unjust enrichment which would result if the person having the property were permitted to retain it."

*See also, St. Clair v. St. Clair,* ___ W.Va. ___, 273 S.E.2d 352 (1980) on unjust enrichment; *Annon v. Lucas,* 155 W.Va. 368, 185 S.E.2d 343 (1971); *Logan Planing Mill Co. v. Pope,* 126 W.Va. 321, 27 S.E.2d 852 (1943) on fraud; *Sweeny v. Patton,* 134 Va. 117, 113 S.E. 715 (1922) on undue influence; *Harrison v. Miller,* 124 W.Va. 550, 21 S.E.2d 674 (1942); *Kersey v. Kersey,* 76 W.Va. 70, 85 S.E. 22 (1915); *Blake v. O'Neal,* 63 W.Va. 483, 61 S.E. 410 (1908), on breach of fiduciary duty.

We have recognized that generally trusts will not be impressed on property transferred from one spouse to another because of our presumption of gift regarding transfers between married parties.[6] As we said in

exceptions for domestic relations proceedings are that the discovery rules do not apply unless specific leave of the court is sought in advance; divorce pleadings must be verified; and no divorce may be granted on simple admissions.

[6] While certain of the early cases refer to resulting trusts the principal operative factor distinguishing a resulting trust from a

*McGinnis v. Curry*, 13 W.Va. 29, (1878) at 64:

> "It is equally well settled, that such a ... trust will not arise, where the party, who advanced the purchase money, bears certain close relations to the party, in whose name the deed is taken. If a father advances the purchase money, for instance, and the deed is taken in the name of a wife or child. *Shaw et al v. Read*, 47 Penn. St. 96. So too, if a grandparent advances the purchase money, and the deed be taken in the name of a grandchild, even tho the father be not dead, the presumption would be, that it was intended as a gift, and no remitting trust would arise. This is a legitimate inference from the English cases. See *Ebrun v. Duncer*, 2 Ch. Ca. 26; *Lloyd v. Read*, 1 Wms. 607; *Kilpin v. Kilpin*, *Moo. & R.* 520 ...."

However, we have also noted that the presumption of gift is a presumption merely and may be rebutted by evidence or circumstances. *McGinnis v. Curry, supra.*

At this point, in addition to a recitation of precedent, a little legal realism is probably in order. Transfers between related persons can be challenged not only by the persons involved, but by third parties as well. The presumption concerning gift has its most forceful effect when a transfer is challenged by a third party, particularly after the death of one of the related persons. The court cannot be blind to the obvious fact that most married persons do not contemplate divorce throughout the entire course of a marriage, and that transfers of property between spouses is usually intended for the joint benefit of both. While we must retain the presumption of gift in order to avoid difficult third party claims (since spouses usually do intend to confer the benefit of property on their other spouse in the event of their death), the presumption of gift is probably

---

constructive trust is the presence of fraud, duress, mistake, undue influence, breach of fiduciary duty or other equitable circumstances in the constructive trust situation. Resulting trusts are impressed only when there has been an explicit fiduciary relationship from the beginning. *See* 5 *Scott on Trusts* § 404.2. Because the court in the case before us impressed a constructive trust, and the appellants argue that that action was improper, we discuss that form of trust.

best rebutted in a suit between spouses by a clear showing of unjust enrichment. Most people do not intend unjustly to enrich the other man.

After considering the authorities we conclude that it is proper for a court to impress a constructive trust on the property of one spouse for the benefit of the other. However, before a party is entitled to such a trust he must (1) overcome the presumption that there was a gift between the parties, and (2) show that he is otherwise entitled to the declaration of a constructive trust. As indicated above, the showing of entitlement to a constructive trust requires: (a) a showing that the party transferred to his spouse money, property, or services, which were actually used to procure property titled in the other spouse's name only and (b) that the transfer was induced by (i) fraud, (ii) duress, (iii) undue influence, (iv) mistake, (v) breach of implicit fiduciary duty, or (vi) that in light of the dissolution of the marriage the other spouse would be unjustly enriched by the transfer.

It is clear from the record of this case that the parties as well as the court were uncertain concerning what had to be shown to establish a constructive trust between the parties. We, therefore, conclude that it is necessary that this case be remanded for further development on this point.

### III

While we have ample authority on unjust enrichment, fraud, duress, undue influence, mistake, or breach of implicit fiduciary duty such as will support the impressing of a constructive trust, the question of what types of services will support a constructive trust between husband and wife appears to be novel.

Services which will support the finding of a constructive trust must be the type which create "sweat equity," that is, they must be of such a nature that they, in a measurable way, directly contribute to the equity of a family investment undertaking or business. The services performed by Mrs. Patterson, such as clerking in a grocery store, are such services. It is apparent from the law of trusts that the purpose of a constructive trust is to redress

unjust enrichment resulting from an equitable wrong. The extent of the property subjected to the trust should be equal to the extent of unjust enrichment. That is, a wife should be entitled to a trust in property to the extent that the husband is unjustly enriched by her contribution. Consequently, there is absolutely no presumption that business property should be divided - evenly. Certain services are worth more than others and this fact must be taken into account. Finally, where a spouse has exchanged her services for adequate consideration obviously no unjust enrichment has occurred.

## IV

The circuit court was entirely correct in setting aside the Nevada decree since the Supreme Court of the United States has held that a sister state is free to determine the issue of domicile, and *per force*, jurisdiction, when a foreign decree arising from an *ex parte* proceeding for divorce is offered for enforcement. *Johnson v. Muelberger*, 340 U.S. 581 (1951); *Rice v. Rice*, 336 U.S. 674 (1949); *Williams v. North Carolina*, 325 U.S. 226 (1945); *Davis v. Davis*, 305 U.S. 32 (1938). Under the *Williams* case, *supra*, a party claiming that a foreign court is without jurisdiction to render a divorce because the plaintiff lacked domicile has the burden of proving that claim by a preponderance of the evidence.

The Nevada statute relating to domicile in divorce proceedings provides:

> "Unless the cause of action shall have accrued within the county while plaintiff and defendant were actually domiciled therein, no court shall have jurisdiction to grant a divorce unless either the plaintiff or defendant shall have been resident of the state for a period of not less than six weeks preceding the commencement of the action." Nevada Revised Statutes § 125.020(2).

The weight of authority is that the residence requirement of this statute is synonomous with the concept of *bona fide* domicile. *Ainscow v. Alexander*, 28 Del. Ch. 545, 39 A.2d 54 (1944); *Stevralia v. Stevralia*, 182 Misc. 1050, 48 N.Y.S.2d 646

(Sup. Ct. 1944). Consequently, the residency requirement not only involves the act of living in the county for the requisite period but also an intent on the part of the resident to make Nevada his home and to remain permanently in the state for an indefinite period. *Stevralia v. Stevralia, supra; Gregg v. Gregg,* 220 Md. 578, 155 A.2d 500 (1959); *Callicoatte v. Callicoatte,* 324 S.W.2d 81 (1959); *Aldabe v. Aldabe,* 84 Nev. 392, 441 P.2d 691 (1968); *Baker v. Baker,* 76 Nev. 127, 350 P.2d 140 (1960); and *Lamb v. Lamb,* 57 Nev. 421, 65 P.2d 872 (1937).

The evidence shows that Mr. Patterson left Logan County in January 1974. In a hearing conducted before the circuit court in May 1974, evidence was introduced concerning the *bona fides* of his residency in Nevada and in that regard the evidence showed that: Mr. Patterson left his clothes in his Logan County home; he returned to Logan County in February 1974 to visit his mother; he returned to Logan County again in May 1974 and refused to pick up his clothes; he drove a truck owned by him with a West Virginia license tag; and, he indicated to a number of people that he intended to go to work for his brother Clarence who operated a construction company in Logan County. When Mr. Patterson's mother became concerned over his strange disappearance, she contacted his lawyer who said, "Ed didn't leave, he is just gone away for awhile." From this evidence the circuit court was entirely correct in concluding that Mr. Patterson was not a *bona fide* resident of Nevada at the time the *ex parte* divorce decree was entered.

V

Finally the appellants claim that the trial court erred in setting aside the transfer of real estate from Mr. Patterson to his daughter. *W. Va. Code,* 40-1-1 [1933] provides, in part:

"Every gift, conveyance, assignment, or transfer of, or charge upon, any estate, real or personal . . . and every bond or other writing given, with intent to delay, hinder, or defraud creditors, purchasers, or other persons, of or from what they are or may be lawfully entitled to, shall as to such creditors,

purchasers, or other persons, their representatives or assigns, be void. . . ."

In interpreting this statute, we have held that a deed to a purchaser of property may be set aside if it was made with an intent to hinder, delay or defraud persons having claims against the property. *Edgell v. Smith*, 50 W.Va. 349, 40 S.E. 402 (1901); *Kyle v. Harveys*, 25 W.Va. 716 (1885). Although transfers to relatives are not necessarily presumed to be fraudulent, they are certainly subject to more careful and close scrutiny than transfers in the normal course of business. *Mullens v. Frazer*, 134 W.Va. 409, 59 S.E.2d 694 (1950). *See Hutchinson v. Walton*, 119 W.Va. 709, 196 S.E. 20 (1938).

The fraud necessary to justify setting aside a conveyance may be inferred from the facts and circumstances of the case. The applicable test is whether a reasonable man would conclude that the conveyance was made with an intent to hinder, delay or defraud. *Miller v. Gillispie*, 54 W.Va. 450, 46 S.E. 451 (1903); *Hunters Ex'ers v. Hunter*, 10 W.Va. 321 (1877); *Sturm v. Chalfant*, 38 W.Va. 248, 18 S.E. 451 (1893). There are certain indicia of fraud which have been identified over the years which ordinarily lead a reasonable person to conclude that a conveyance was fraudulent. Among these well established indicia of fraud are: (1) gross inadequacy of consideration paid for the property by the grantee, *Wood v. Harmison*, 41 W.Va. 376, 23 S.E. 560 (1895); (2) retention of possession and control of real estate conveyed by the grantor after the conveyance, *Miller v. Correll*, 97 W.Va. 215, 124 S.E. 683 (1924); (3) close pursuit of the grantor by his creditors at the time the transaction was made, *Citizen's Bank v. Wilfong*, 66 W.Va. 470, 66 S.E. 36 (1909); and, (4) the transfer of property to relatives during litigation. *Mullens v. Frazer, supra.*

In the case before us Mr. Patterson transferred property for grossly inadequate consideration to his daughter while he was involved in a divorce proceeding. After the transfers Mrs. Matthews gave her father a power of attorney to operate the laundromats and there is evidence that he was involved with the actual operation of the laundromats after the execution of the deeds. Upon this evidence we

conclude that any reasonable man would infer that the properties were fraudulently conveyed and that the circuit court was entirely correct in his holding in that regard.

For the reasons set forth above the judgment of the Circuit Court of Logan County is, in part, affirmed and, in part, remanded for further development on the constructive trust question.

*Affirmed in part;*
*remanded in part.*