357 S.E.2d 38

**Janet B. WACHTER**

v.

**Del Frank WACHTER and James F. Wachter.**

**No. 17122.**

Supreme Court of Appeals
of West Virginia.

March 11, 1987.

Rehearing Denied June 3, 1987.

---

Robert R. Skinner, Charles Smith, Charles Town, for appellant.

Charles F. Printz, Jr., Martinsburg, for appellees.

BROTHERTON, Justice:

Janet B. Wachter appeals from the Circuit Court of Morgan County, claiming that several errors were made in the adjudication of her share of the estate of her husband, the late Herbert D. Wachter. We find no error in the proceedings below, and therefore affirm.

Herbert Wachter, a resident of Morgan County, died testate on October 20, 1984. He was survived by Janet Wachter, his wife of seventeen years, and by two sons by a previous marriage. The sons are the

appellees, Del Frank Wachter and James Ford Wachter. The decedent's will left his entire estate to his sons and expressly left nothing to his widow. The widow elected to renounce the will and to take her intestate share pursuant to W.Va.Code § 42-3-1 (1982). The probate estate consisted primarily of the Wachters' home and the real estate on which it was located. The decedent also had a certificate of deposit in the amount of approximately $111,000, which passed outside his will to his son, James Ford Wachter, by right of survivorship.

The sons instituted a civil action in the Circuit Court of Morgan County, seeking possession of the home and a lump sum award to the widow for her dower interest in the real estate. Mrs. Wachter counterclaimed that she was entitled to a constructive trust in the real estate because she had contributed to the purchase price, improvements, and repair of the home pursuant to an understanding with her husband that she was to have a half interest. Record title was in the husband's name at all times. Mrs. Wachter also asserted that she was entitled to one-third of the $111,000 certificate of deposit, because it was made with fraudulent intent to deprive her of her share of the couple's savings.

In addition, at the trial the sons introduced the original of a written property settlement agreement between Herbert and Janet Wachter, which was signed by the parties and acknowledged by a notary public on November 22, 1982. Herbert Wachter had filed twice for a divorce in the latter years of the couple's marriage, and the agreement cites irreconcilable differences as the reason for determining property rights between the parties. The agreement provided a formula for Herbert Wachter's purchase of his wife's one-half interest in jointly owned real estate, made reference to an equal division of a joint savings account, and provided that Janet Wachter would waive all rights of dower and inheritance against her husband. There was some controversy over whether the subject real estate was the marital home or an unimproved lot adjacent to the home (because only the unimproved lot was jointly owned), and the circuit court found that it was the unimproved lot. Also, there was no joint savings account to be divided. Moreover, the parties did not separate or divorce before Herbert Wachter's death, and the agreement was never performed in any respect.

When the agreement was introduced at trial, Janet Wachter testified that her signature did not look authentic, that she never signed an agreement of that length, and that it looked as if the signature page had been taken off another document and attached to this agreement. The notary testified that he remembered acknowledging both signatures but didn't review the document itself.

The trial court found in favor of the sons on all issues, and awarded Janet Wachter $15,286, representing her dower interest in the real property. She raises three issues on appeal: First, whether she was entitled to a constructive trust in the marital home, which would give her a one-half interest; second, whether Herbert Wachter's creation of a joint certificate of deposit with his son was a fraudulent transfer and therefore void under W.Va.Code § 40-1-1 (1982); and third, whether the property settlement agreement of November, 1982, should be enforced.

I.

Janet Wachter testified that she provided at least half of the $100 used by her husband to purchase a lot from his parents on which their home was built; that she was a joint obligor on notes used to finance the construction of their home; and that she used her own money to repay portions of the home loan, repairs, etc. Other evidence adduced at trial showed that Herbert Wachter made at least $12,000 in payments on the couple's $16,000 mortgage from his separate checking account.[1] Both husband and wife made regular contributions to the

1. The parties introduced no evidence of how much principal was reflected in $12,000 of payments, which presumably included interest.

parties' joint checking account. All payments shown to have been made by Janet Wachter were made from the joint account. Janet Wachter worked as a teacher throughout the marriage, and did contribute to the joint checking account, although she testified that she also had a separate checking account.

■ In syllabus point 4 of *Patterson v. Patterson*, 167 W.Va. 1, 277 S.E.2d 709 (1981), this Court set out the rules for imposing a constructive trust on property titled in the name of one spouse for the benefit of the other in a divorce case:

> Before a trial court may properly impress a constructive trust on property titled in the name of one spouse for the benefit of the other, the spouse seeking the trust must by a preponderance of the evidence: (1) overcome the presumption that there was a gift between the parties, and (2) show that he or she is otherwise entitled to the declaration of a constructive trust. Entitlement to a constructive trust requires: (a) a showing that the party transferred to his or her spouse money, property, or services which were actually used to procure property titled in the other spouse's name only; (b) that the transfer was induced by (i) fraud, (ii) duress, (iii) undue influence, (iv) mistake, (v) breach of implicit fiduciary duty, or (vi) that in light of the dissolution of the marriage the other spouse would be unjustly enriched by the transfer.

These same standards apply in the current situation, with the possible exception of the final criterion regarding unjust enrichment upon dissolution of the marriage.[2]

■ With regard to the presumption of a gift, West Virginia Code § 48-3-10 (1986) provides that where one spouse purchases property and pays for it, but titles it in the other spouse's name, the transfer is presumed to be a gift, absent evidence of a contrary intention.[3] Janet Wachter does not dispute that Herbert Wachter held title to the real estate in issue. She testified that she contributed money to buy the lot and to pay for the home. She also testified that she did not intend those contributions to be gifts to her husband. The presumption of a gift, however, is not necessarily rebutted by such an assertion alone. In *Dodd v. Hinton*, 173 W.Va. 69, 312 S.E.2d 293 (1984), for example, the parties paid off the mortgage on their jointly owned home with proceeds from the sale of the husband's former residence, which he had deposited in the couple's joint checking account. This Court upheld the trial court's finding that the husband made a gift of payments he made individually, and similarly could not claim money deposited in the joint account as his own, regardless of its source. Therefore, he could not, after divorce, compel his ex-wife to contribute her half of the mortgage money by saying that he had not intended to make a gift. 173 W.Va. at 70, 72, 312 S.E.2d at 294, 296. Similarly, in this case, Janet Wachter relinquished her individual claim to any money she deposited in the joint account, and she failed to offer evidence that she made other payments that were not gifts. As in *Dodd v. Hinton*, there was no evidence in this case of any writing requiring equal contribution by both parties, and a joint note and deed of trust cannot be construed to constitute such an agreement. *See* 173 W.Va. at

---

2. In the case of death of a spouse, the legislature has sought to prevent unjust enrichment of the decedent's heirs by allowing the surviving spouse a statutory share of the estate, which he or she may elect regardless of less generous provisions in the decedent's will. *See* W.Va. Code § 42-3-1 (1982). To allow independent recovery on the ground of unjust enrichment might undermine the effectiveness of this statutory rule. Because we uphold the trial judge's determination that the presumption of a gift was not rebutted, it is not necessary to reach the possibility of unjust enrichment in this case.

3. The statute reads, in part:

> Where one spouse purchases real or personal property and pays for the same, but takes title in the name of the other spouse, such transaction shall, in the absence of evidence of a contrary intention, be presumed to be a gift by the spouse so purchasing to the spouse in whose name the title is taken....

W.Va.Code § 48-3-10 (1986).

70, 312 S.E.2d at 294.[4] Further, the conflicting evidence as to the source of the funds used to pay for the house could have led the trial court to conclude that the second prong of the *Patterson* test had not been met, *i.e.*, that Mrs. Wachter's funds were not actually used to pay for the real estate. The circuit court found that Mrs. Wachter had not rebutted the presumption of a gift. This holding was supported by the evidence, and we find no error therein.

## II.

West Virginia Code § 40–1–1 (1982), which was repealed in 1986,[5] provided:

> Every gift, conveyance, assignment, or transfer of, or charge upon, any estate, real or personal, every suit commenced, or decree, judgment, or execution suffered or obtained, and every bond or other writing given, with intent to delay, hinder, or defraud creditors, purchasers, or other persons, of or from what they are or may be lawfully entitled to, shall as to such creditors, purchasers, or other persons, their representatives or assigns, be void. This section shall not affect the title of a purchaser for valuable consideration, unless it appears that he had notice of the fraudulent intent of his immediate grantor, or of the fraud rendering void the title of such grantor.

Janet Wachter claims that the creation of the certificate of deposit in the joint names of her husband and his son, James, constituted a fraudulent transfer intended to deprive her of her rightful share in the couple's savings. At trial, the sons introduced evidence that some of the money for the certificate of deposit came from the sons' savings accounts, a joint savings bond of the decedent and his son, Del, and checks from the decedent's individual checking account. Both sons also testified that they regularly made contributions to the decedent's investments on their behalf. There was no evidence that any of the money invested in the certificates of deposit that culminated in the $111,000 CD came from either Janet Wachter individually or the couple's joint checking account, although one $11,000 certificate that was rolled over into the larger certificate had been titled in the joint names of Herbert and Janet Wachter.

■ Fraud may be inferred from the facts and circumstances of the case. The test is whether a reasonable man would conclude that the conveyance was made with the intent to hinder, delay or defraud. *See, e.g., Patterson v. Patterson, supra,* 167 W.Va. at 15, 277 S.E.2d at 718. Although Mrs. Wachter may have had a legitimate expectation of sharing in the decedent's savings, and appears to have believed justifiably that the decedent had been saving a portion of their joint funds, the nonexistence of a joint savings account did not necessarily constitute fraud. Based on the evidence regarding the source of funds making up the certificate, reasonable men could conclude that Herbert Wachter was saving for his sons from his own earnings and the earnings of his sons, rather than seeking to defraud his wife. We believe there was sufficient evidence to support such a finding. Because there was no other evidence of fraud or overreaching, it was within the discretion of the trial court to conclude that Janet Wachter had not met her burden of proving fraud. We therefore find no error.

## III.

■ The circuit court held that the written agreement of November 22, 1982, was of no force and effect because Janet Wachter denied its existence, the parties never separated, and the agreement was never performed by either party. Moreover, the agreement was so vague that the court had trouble interpreting what real estate it concerned. The widow argues on appeal that the parcel concerned includes the house and that the contract should be enforced because it was signed. We agree with the circuit court that the agreement,

---

4. As discussed below, the separation agreement in this case does not compel a finding that the widow had an independent one-half interest, because its terms were never performed.

5. Similar provisions are now found in Article 1A, Chapter 40, the Uniform Fraudulent Transfers Act.

which called for both parties to perform certain tasks within certain time periods that had lapsed prior to Herbert Wachter's death, is no longer enforceable. This would be true even if Janet Wachter had not cast further doubt on its validity by denying the authenticity of her signature. It is not, therefore, necessary to reach the actual interpretation of ambiguous contract terms.

For the foregoing reasons, we affirm the decision of the Circuit Court of Morgan County.

Affirmed.