376 S.E.2d 97

**Katherine N. SMITH, Plaintiff Below, Appellee,**

v.

**John Paul SMITH, Defendant Below, Appellant.**

**No. 17271.**

Supreme Court of Appeals of West Virginia.

Nov. 23, 1988.

John Yeager, Jr., Weirton, for appellant.

Raymond A. Hinerman, Weirton, for appellee.

MILLER, Justice:

John Paul Smith appeals from a May 1, 1986 final order of the Circuit Court of Hancock County which ordered a partition sale of real estate jointly titled with Katherine N. Smith, his former wife. The order set a minimum recovery for Mrs. Smith from the sale in the amount of $62,500 less her share of the costs. The order taxed the appraisers' costs to Mr. Smith and taxed all other costs jointly to the parties.

Katherine N. Smith and John Paul Smith own a 5.54 acre parcel of real estate upon which is situated a two and one-half story brick dwelling house and other outbuildings. The real estate is located on Route 2, Newell, West Virginia. On June 8, 1979, the Smiths, while husband and wife, ac-

quired the property to be used as a retirement home. They were divorced on January 8, 1981, in Nueces County, Texas. The divorce decree expressly provided that it did not affect their interests in this West Virginia real estate.

On May 13, 1981, Mrs. Smith filed a partition action and asked the Circuit Court of Hancock County to sell the real estate, contending that it could not be conveniently or equitably partitioned between the owners. Mr. Smith answered, denied that Mrs. Smith owned an interest in the property, and sought a constructive trust in any share of the realty the circuit court might decide she owned.

The circuit court held in December, 1981, that Mrs. Smith owned an undivided one-half interest in the real property and that such property could not be conveniently partitioned in kind. Mr. Smith then sought allotment of the entire tract and offered to pay Mrs. Smith the value of her one-half share under W.Va.Code, 37–4–3 (1957).[1] Pursuant to this statute, the court appointed three appraisers and subsequently on August 3, 1983, held a hearing upon Mr. Smith's objection to the property valuation and Mrs. Smith's claim to the property. Basically, Mr. Smith contended that all the funds used to purchase the property were his separate assets, that he intended no gift to Mrs. Smith, and that she would be unjustly enriched if awarded a one-half interest in the real estate.

Upon completion of the hearing, but before entry of a final order, the circuit court judge resigned his position. The newly assigned judge reviewed all pleadings, exhibits, and a transcript of the August 3, 1983 hearing. The circuit court again found that Mrs. Smith owned an undivided one-half interest in the property, that the property was not divisible in kind, and that if allotment was not sought by either co-owner, the property should be sold by order of the court. Mr. Smith again sought allotment, which the court granted on Sep-

---

1. W.Va.Code, 37–4–3 (1957), provides, in pertinent part: "When partition cannot be conveniently made, the entire subject may be allotted to any party or parties who will accept it, and pay therefor to the other party or parties such sum of money as his or their interest therein may entitle him or them to[.]"

**206**

tember 20, 1985. In its order, the court determined the fair market value of the real property to be $125,000.

At a subsequent status conference, the parties agreed to a schedule for execution of a deed by Mrs. Smith, its delivery to the court, and payment for the undivided one-half interest in the property. Mrs. Smith delivered to the court a fully executed deed pursuant to this order. On January 10, 1986, Mr. Smith notified the court that he waived allotment and intended to appeal the court's findings regarding Mrs. Smith's one-half ownership interest and the property value.

On May 1, 1986, the court entered its order charging Mr. Smith with all costs incurred as a result of his previous allotment election and guaranteed Mrs. Smith recovery of her share of the fair market value of the property. It appears the court concluded that Mr. Smith's numerous delays warranted inclusion in the order of a provision that he guarantee payment of one-half of the fair market value of the property, i.e., $62,500, to Mrs. Smith. The court then appointed a special commissioner to proceed with a sale of the property. Mr. Smith appealed and no sale has been held.

## I.

We first address Mrs. Smith's interest in the real property.[2] Mr. Smith first claims that he has overcome the presumption of gift contained in W.Va.Code, 48–3–10 (1931), which provides: "Where one spouse purchases real or personal property and pays for the same, but takes title in the name of the other spouse, such transaction shall, in the absence of evidence of a contrary intention, be presumed to be a gift by the spouse so purchasing to the spouse in whose name the title is taken."[3] As a second theory, Mr. Smith sought to impose a constructive trust on Mrs. Smith's one-half interest since he had contributed the bulk of the money for the purchase of the property. It appears that Mrs. Smith may have contributed some money and joined on the deed of trust and note of $20,000, which represented the balance of the purchase price of $70,000.

We spoke to these same issues in *Dodd v. Hinton*, 173 W.Va. 69, 312 S.E.2d 293 (1984). *Dodd* involved the presumption of gift under W.Va.Code, 48–3–10 (1931), prior to the 1984 amendment which, as indicated in note 3, *supra*, removed the presumption of gift in divorce cases where equitable distribution of property is involved. The husband had purchased a home and titled it in his and his wife's names shortly after their marriage. Subsequently, he sold a house which was in his name alone. The proceeds were used to pay off the deed of trust on the new home. A year later, his wife divorced him. The trial court did not dispose of the real estate in the divorce action. Thereafter, a partition suit was

---

2. Mrs. Smith argues that the decisions relative to her one-half interest in the property as well as the claim of constructive trust were never timely appealed. It does appear that the December 1981 order did determine that the property was not subject to a division in kind and ordered a sale. However, the questions of Mr. Smith's constructive trust and claim of gift were not resolved until the August 1983 hearing and no order was entered before the judge resigned. In partition suits, we have accorded some flexibility in appealing orders. *See Garlow v. Murphy*, 111 W.Va. 611, 163 S.E. 436 (1932); *Wright v. Pittman*, 73 W.Va. 81, 79 S.E. 1091 (1913); *see generally* 14A Michie's Jurisprudence, *Partition* § 48 (1978). Here, the chief controversy is that of imposing a "floor" of $62,500 for Mrs. Smith's interest which was not decided until the May 1986 final order.

3. This partition suit was filed in May 1981. Subsequently, in 1984, W.Va.Code, 48–3–10, was amended to add a proviso:

"Provided, That in the case of an action under the provisions of article two [§ 48–2–1 et seq.] of this chapter wherein the court is required to determine what property of the parties constitutes marital property and equitably divide the same, the presumption created by this section shall not apply, and a gift between spouses must be affirmatively proved."

This alters the presumption of gift for equitable distribution considerations in a divorce action. However, this proviso has no applicability here as it was enacted after the Smiths' divorce. An additional reason for nonapplicability of this current statute is that the Texas divorce decree gave no interest in the West Virginia real estate nor appeared to consider it in any equitable distribution made by that court.

filed and the husband sought to rebut the presumption of gift and also sought to impose a constructive trust on the theory of unjust enrichment.

In *Dodd,* we declined to overturn the trial court's finding that there had been insufficient evidence to rebut the presumption of gift by way of any prior agreement. A similar situation exists in the present case. There was nothing to demonstrate that any specific understanding had been reached by the parties that limited Mrs. Smith's interest. Furthermore, it appears that part of the initial down payment came from joint funds. We affirm the trial court's holding on this point and reaffirm *Dodd*'s Syllabus:

> " 'Where a husband purchases real property and causes deeds therefor to be made to himself and wife, jointly, it is presumed that he intended a gift to his wife of a moiety of the property and that she should be vested with full legal and equitable title to such interest, in the absence of clear evidence to the contrary.' Syl. pt. 2, *Edwards v. Edwards,* 117 W.Va. 505, 185 S.E. 904 (1936)."

*See also Wachter v. Wachter,* 178 W.Va. 5, 357 S.E.2d 38 (1987); *Myers v. Myers,* 176 W.Va. 326, 342 S.E.2d 294 (1986); *Coffman v. Coffman,* 108 W.Va. 285, 150 S.E. 744 (1929).

The constructive trust argument was also rejected in *Dodd:* "In *Patterson v. Patterson,* 167 W.Va. 1, 277 S.E.2d 709 (1981), we did not disturb this presumption of a gift regarding transfers between spouses, but noted that it may be rebutted by a clear showing of unjust enrichment." [4] 173 W.Va. at 71, 312 S.E.2d at 295. We

went on in *Dodd* to make it clear that in order to prove unjust enrichment, it was necessary to show "fraud, duress, undue influence, mistake, breach of fiduciary duty, or wrongful disposition of the property." 173 W.Va. at 71, 312 S.E.2d at 295. No such facts were shown in *Dodd* nor in the present case. We, therefore, affirm the trial court's ruling on this issue.

## II.

Perhaps the more novel issue in this case is the trial court's order that the property be sold and that Mrs. Smith be guaranteed the right to obtain $62,500, which is one-half of the fair market value of $125,000 as found by the court.[5] It may well be that the court was honoring the repeated requests made earlier for an entire allotment of the property to Mr. Smith. This is a procedure recognized under W.Va.Code, 37–4–3, which provides that when partition in kind "cannot be conveniently made, the entire subject may be allotted to any party or parties who will accept it, and pay therefor to the other party or parties such sum of money as his or their interest may entitle him or them to...."

This is a procedure that we have had little occasion to discuss. In our earliest and leading case, *Corrothers v. Jolliffe,* 32 W.Va. 562, 565, 9 S.E. 889, 890 (1889), we acknowledged the right to allotment, but indicated it requires more than a mere offer by one of the parties to buy out the other:

> "If, however, only one of the parties is willing to have the whole allotted to him, and the other parties are unwilling to

**4.** Syllabus Point 4 of *Patterson* states:

"Before a trial court may properly impress a constructive trust on property titled in the name of one spouse for the benefit of the other, the spouse seeking the trust must by a preponderance of the evidence: (1) overcome the presumption that there was a gift between the parties, and (2) show that he or she is otherwise entitled to the declaration of a constructive trust. Entitlement to a constructive trust requires: (a) a showing that the party transferred to his or her spouse money, property, or services which were actually used to procure property titled in the other spouse's name only; (b) that the transfer was induced

by (i) fraud, (ii) duress, (iii) undue influence, (iv) mistake, (v) breach of implicit fiduciary duty, or (vi) that in light of the dissolution of the marriage the other spouse would be unjustly enriched by the transfer."

**5.** Mr. Smith contests the setting of this amount, but it was done after the appointment of official appraisers under W.Va.Code, 37–4–3, and appraisements were made and a hearing was held on the value question. We do not disturb the trial court's finding on value as it was supported by competent evidence which ranged from $96,400 to $166,500.

take for their interests what such party is willing to pay therefor, then the court may either refer the matter to a commissioner to ascertain the fair value to be paid for said interests, or order the whole subject to be sold, as the one or the other course may seem to the court to be the most advisable, and promotive of the interests of all the parties in interest." [6]

In this case, Mrs. Smith did not object to the allotment of the entire property to her husband upon his payment to her of one-half of its market value. There was a disagreement as to the value of the property. The court, following the statutory procedure, appointed appraisers to determine the value. The court held a hearing on Mr. Smith's objection to the value, all as required by the statute.[7]

Upon completion of these proceedings, the court in its order of October 30, 1985, allotted the property to Mr. Smith upon his payment of $62,500 to Mrs. Smith. This was followed by a more detailed order dated December 17, 1985, which required Mr. Smith to deposit $62,500 with the clerk of the circuit court by January 15, 1986. It also required Mrs. Smith to deliver her deed for one-half interest to the clerk.

As earlier stated, Mrs. Smith delivered her executed deed to the clerk on January 8, 1986. However, at this point, Mr. Smith indicated he was not interested in having an allotment. This was followed by several hearings before the court culminating in the May 1, 1986 order. The court's memorandum opinion dated April 1, 1986, indicates that the court believed that once Mr. Smith had withdrawn his requested allotment, it had no power to compel him to abide by the allotment procedure. It was for this reason, and apparently out of a sense of deep frustration at the delay occasioned by Mr. Smith, that the court ordered the property to be sold by a special commissioner with Mrs. Smith being guaranteed $62,500 from the sale proceeds.

■ With regard to the court's right to order Mr. Smith to perform his allotment obligation, we believe our statute authorizes this to be done. As we have earlier noted, W.Va.Code, 37–4–3, provides a comprehensive procedure for this type of allotment, including the right to ascertain the value of the property if the parties do not agree and a court hearing on the value issue. The statute goes on to provide that once the hearing concludes with a finding of fair market value, the court "shall decree payment therefor according to the respective rights of those entitled thereto...." W.Va.Code, 37–4–3.

It is clear from the record that the orders of October 30, 1985, and December 17, 1985, made the finding of fair market value and decreed payment to Mrs. Smith in the amount of $62,500. We do not believe that after this Mr. Smith could unilaterally withdraw his request for allotment. Thus, the trial court was mistaken in concluding it could not compel the completion of the allotment and payment simply because of Mr. Smith's desire to withdraw from the procedure.

---

**6.** In *Garlow v. Murphy,* 111 W.Va. 611, 163 S.E. 436 (1932), we dealt with another type of allotment question, which is, when a partition in kind between the owners cannot be conveniently made. A sale of the property is deemed appropriate under W.Va.Code, 37–4–3, and an "allotment of part and the sale of the residue" may be ordered. Thus, *Garlow* recognized that our statute enabled a partial partition in kind with a sale of the residue and disbursement of the funds to the other co-owner. In *Maxwell v. Stalnaker,* 142 W.Va. 555, 96 S.E.2d 907 (1957), we spoke to an "allotment in kind," but clearly we meant a partition in kind.

**7.** This procedure is clearly contemplated by our statute, W.Va.Code, 37–4–3 (1957), which provides in pertinent part:

"In the event that allotment shall be made as aforesaid and the person or persons entitled to the proceeds, for any reason, cannot agree upon the value of the subject, the court, or the judge thereof in vacation, shall appoint three disinterested and qualified persons to fix the value of the whole subject who, after being duly sworn [shall] make an appraisal of the fair market value of the subject.... The report of the appraisers when filed, shall be conclusive and binding upon all persons having any interest in the subject, unless an objection is filed.... If objection is made to such report, the court, or the judge thereof in vacation, shall take evidence upon the value of the subject[.]"

■ The order dated May 1, 1986, set a special commissioner's sale with a guarantee to Mrs. Smith of $62,500. This sale procedure is also sanctioned under W.Va. Code, 37–4–3, as it is the traditional method of disposing of jointly owned property where partition in kind is found not to be feasible. The test for a partition in kind is stated in Syllabus Point 3 of *Consolidated Gas Supply Corp. v. Riley,* 161 W.Va. 782, 247 S.E.2d 712 (1978):

> "By virtue of W.Va.Code, 37–4–3, a party desiring to compel partition through sale is required to demonstrate that the property cannot be conveniently partitioned in kind, that the interests of one or more of the parties will be promoted by the sale, and that the interests of the other parties will not be prejudiced by the sale."

*See also Koay v. Koay,* 178 W.Va. 280, 359 S.E.2d 113 (1987);[8] *Stillings v. Stillings,* 167 W.Va. 796, 280 S.E.2d 689 (1981).

The record reflects that the court had earlier determined that a partition in kind of the property was not feasible. Thus, it had made the requisite findings to order the sale under *Consolidated Gas Supply Corp., supra.* Undoubtedly, had Mr. Smith not requested an allotment in kind, the court would have ordered the sale.

It is, therefore, clear that the court decided ultimately to make a partition sale. The remaining question is whether it could, in the absence of a statute, set a specific dollar amount in advance of the sale to be given to a co-owner. There are several cases that hold that a court may in advance of a partition sale order that property not be sold at less than a stated figure. *E.g., Tuttle v. Tuttle,* 462 So.2d 175 (La.1985); *Gillmore v. Gillmore,* 657 P.2d 736 (Utah 1982).

It appears that we have not had occasion to speak to this particular point. Our cases do agree that a court does have rather broad discretion in deciding whether to accept a bid to ensure that a judicial sale is fairly conducted to bring the best possible price. *See State v. Hatfield,* 136 W.Va. 342, 67 S.E.2d 529 (1951); *State v. Murphy,* 109 W.Va. 102, 153 S.E. 149 (1930); *Cline v. Bailey,* 85 W.Va. 139, 101 S.E. 171 (1919).[9]

■ However, we have not found any case which authorizes a court, prior to a judicial sale of real estate, to set a specific dollar amount for an owner's interest in such real estate to be guaranteed out of the proceeds of such sale. Thus, we conclude that the court lacked authority to guarantee to Mrs. Smith the $62,500 figure in advance of the sale.

On remand, the circuit court has, in effect, two options: first, to maintain the allotment procedure and require the payment of $62,500 in exchange for Mrs. Smith's deed for her one-half interest; or, second, to abandon the allotment procedure and proceed with a judicial sale.[10] We recognize that the appraisals which form the

**8.** In *Koay,* we utilized Syllabus Point 1 of *Loudin v. Cunningham,* 82 W.Va. 453, 96 S.E. 59 (1918), which indicates that "the interests of all the cotenants will be promoted by a sale." As we pointed out in *Consolidated Gas Supply Corp., supra,* as a result of the 1931 revision to the West Virginia Code, it is not necessary that the interests of all parties be promoted. The language in W.Va.Code, 37–4–3, was revised to read: "if the interests *of one or more* of those who are entitled to the subject, or its proceeds, will be promoted by sale...." (Emphasis added).

**9.** Syllabus Point 4 of *Cline* sets this rule:

> "It is in the interest of justice that a judicial sale be so conducted as to yield to the party whose property is being sold the best price that can fairly be had, and any conduct on the part of those actively engaged in the selling or

bidding that tends to prevent a fair, free, open sale, or stifle or suppress free competition among bidders is contrary to public policy, vitiates the sale, and constitutes ground for setting it aside upon the complaint of the injured party."

It should be noted that once the court accepts the bid made at a judicial sale and confirms the sale, a higher standard of proof is required such as fraud or other inequitable conduct. *Eakin v. Eakin,* 83 W.Va. 512, 98 S.E. 608 (1919); *see also Merchants Nat'l Bank of Point Pleasant v. Ralphsnyder,* 113 W.Va. 480, 169 S.E. 89 (1933).

**10.** We agree with the circuit court's finding that if the allotment is abandoned, the costs in connection with the allotment proceedings and appraisal should be charged to Mr. Smith, as he was the one who initiated the allotment procedures inducing the court appraisals.

basis for the fair market value are approximately five years old. For this reason, the circuit court may wish to reevaluate the fair market value price.

For the foregoing reasons, this case is reversed and remanded with directions to the Circuit Court of Hancock County.

REVERSED AND REMANDED WITH DIRECTIONS.